Marion BOOKHART

v.

MID–PENN CONSUMER DISCOUNT
CO.

Civ. A. No. 82–1239.

United States District Court,
E.D. Pennsylvania.

Jan. 31, 1983.

Theodore Clattenburg, Jr., Community Legal Services, Philadelphia, Pa., for plaintiff.

Arthur J. Matusow, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court are cross-motions for summary judgment arising out of a claim for violations of the disclosure requirements of the Truth-in-Lending Act (TLA or the Act), 15 U.S.C. § 1601, and Regulation Z, 12 C.F.R. § 226. Jurisdiction of the case is premised upon the Act's specific jurisdictional grant section, 15 U.S.C. § 1640, and 28 U.S.C. § 1337. Upon review of the pleadings, the stipulation of agreed upon facts, the responses to discovery, and all matters of record, the Court finds that there is no genuine issue of material fact. The only issue for decision is whether defendant Mid-Penn Consumer Discount Company's (Mid-Penn) disclosure statement of January 23, 1979, contained any material violation of TLA or Regulation Z so that plaintiff Marion Bookhart had the right to rescind the transaction. For the reasons set forth below, plaintiff's motion will be granted and defendant's motion will be denied.

## I. Facts

The parties have entered into a stipulation as to the following facts. On January 23, 1979, defendant Mid-Penn extended credit to plaintiff Marion Bookhart and her husband, Leroy Bookhart. This loan refinanced an earlier loan which had been granted by Mid-Penn on May 26, 1977 (and which had been used to finance home improvement work performed by Main Line Builders), and provided additional funds to finance new home improvement work by JSS Main Line Builders. Jules Clearfield, a broker, referred this loan, as well as the earlier loan of May 26, 1977, to Mid-Penn on behalf of Main Line Builders. He called in the application and conveyed to Mid-Penn the normal credit information required by lending institutions. Mid-Penn was contacted in both these transactions by Mr. Clearfield and not by the Bookharts. On both occasions an employee of Mid-Penn went to plaintiff's home to have the credit documents executed. On both occasions plaintiff and her husband were given copies of the federal disclosure statement and notice of right of rescission form. No other legal documents were given the Bookharts nor were any required under any applicable laws. On March 19, 1981, plaintiff, by her counsel, wrote Mid-Penn to notify it that she was rescinding the transaction of January 23, 1979. Mid-Penn received a copy of plaintiff's rescission letter. Mid-Penn did not respond to the rescission letter within ten days nor take any of the actions required under the rescission provisions of Truth-in-Lending.

In addition, a review of the record indicates that certain other key facts are not in dispute. In conjunction with the 1977 loan, defendant took a security interest in plaintiff's home for $2,808.00, the full amount of the 1977 loan. In conjunction with the 1979 loan, defendant took an additional security interest in plaintiff's home for $5,760.00, the full amount of the 1979 loan. Thus, after the 1979 loan was executed, defendant held security interests totaling $8,568.00.

Plaintiff's indebtedness at this stage, however, was only $5,760.00, as the 1979 loan included a refinancing of the unpaid principal on the 1977 loan. This figure may be broken down as follows:

| Unpaid principal amount of the 1977 loan | $1,188.34 |
|---|---|
| New cash disbursements | 1,759.40 |
| Other charges, mostly for insurance | + 464.46 |
| Amount Financed in 1979 | $3,412.20 |
| Finance charge of 22.9% on $3,412.20 | + 2,347.80 |
| Total amount loaned in 1979 | $5,760.00 |

## II. Discussion

TLA is a federal statute which regulates the terms and conditions of consumer credit. Its congressionally declared purpose is to assure the informed use of credit through a meaningful disclosure of credit terms so that consumers can more readily compare different financing options and their costs. 15 U.S.C. § 1601. In keeping with this purpose, the Act is to be liberally construed in the consumer's favor. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973); *Johnson v. McCrackin-Sturman Ford,* 527 F.2d 257, 262 (3d Cir.1975).

Meaningful disclosure is guaranteed through TLA's requirement that the creditor must, in most cases, furnish the credit customer with a separate disclosure statement. *See* 15 U.S.C. § 1638 (1982); 12 C.F.R. § 226.8 (1982). The Act dictates which credit terms must be included in the statement, and Regulation Z requires that the information be set forth in a clear and straightforward manner. *See* 12 C.F.R. § 226.6(a) & (c).

Under § 1635 of the Act, when a creditor takes a security interest in property which is used as the principal residence of the consumer, the consumer has the right to rescind the transaction until the end of the third business day following the transaction, or until the creditor delivers to the consumer the information, notification of rescission forms, and disclosure statement as required by the Act, whichever is later. 15 U.S.C. § 1635(a). In other words, if the disclosure statement fails to comply with TLA's disclosure requirements,[1] the consumer has a continuous right to rescind for as long as the creditor fails to comply.[2]

When a consumer exercises his right to rescind under § 1635(a), § 1635(b) provides that he or she is discharged from liability for any finance or other charge, and any security interest which has been taken becomes void. Further, within twenty days of receiving notice of rescission, the creditor must return any money given as down payment, earnest money, or the like, and must take appropriate steps to terminate any security interest created. Once the creditor has performed these obligations, the consumer must tender the property obtained by the loan or its reasonable value. 15 U.S.C. § 1635(b).

The present facts are that defendant extended credit to plaintiff on January 23, 1979, and that on March 19, 1981, over two years later, plaintiff informed defendant that she was rescinding the transaction. The critical question is thus whether defendant's disclosure statement of January 23, 1979, failed to comply with the Act's requirements so that plaintiff still retained the right to rescind on March 19, 1981.

---

1. In order to rescind for a disclosure violation, however, the rescission provision requires that the nondisclosure be material. *Bustamante v. First Federal Savings and Loan Ass'n,* 619 F.2d 360, 363 (5th Cir.1980); *Lee v. Fidelity Consumer Discount Co.,* No. 79–2160 (E.D.Pa. filed June 15, 1981). The courts have utilized an objective standard to determine whether a nondisclosure is material. The test is whether the disclosure violation relates to information which would be pertinent to a borrower's decision to obtain credit from the lender in question. *Bustamante v. First Federal Savings and*

*Loan Ass'n., supra,* 619 F.2d at 364; *Lee v. Fidelity Consumer Discount Co., supra,* slip op. at 16; *Ivey v. Department of Housing and Urban Development,* 428 F.Supp. 1337, 1342–43 (N.D.Ga.1977), *aff'd mem.,* 607 F.2d 1004 (5th Cir.1979).

2. In 1974, the Truth-in-Lending Act was amended to add a three year limitations period for the right to rescind, notwithstanding that the disclosures were never made. *See* P.L. 93–495, § 405, 88 Stat. 1517, 1519 (Oct. 28, 1974) (codified at 15 U.S.C. § 1635(f)).

Plaintiff claims multiple violations of the Act, namely: failure to clearly disclose the security interests taken or retained as required; failure to disclose a certain broker as a creditor; failure to disclose the service charge as a prepaid finance charge, and, failure to keep meaningless information off of the disclosure statement. In view of these failures, plaintiff claims she is entitled to rescind.

Defendant claims that none of the violations alleged are in fact violations of the Act, and therefore asserts that it is under no duty to rescind the transaction.

### A. Failure to Clearly Disclose the Security Interests Taken or Retained

TLA requires a creditor to disclose "[a] description of any security interest held *or to be retained* or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates." 15 U.S.C. § 1639(a)(8) (emphasis added). Defendant's disclosure statement accompanying the 1979 loan describes its security interest as follows: "This loan is Secured by a Mortgage and Note of even date on the property described [as] 1837 Hazel Ave., Phila. Pa." Defendant's disclosure statement is inaccurate because, as defendant has admitted in discovery, the 1979 loan was secured by two mortgages of different dates. Defendant's Answers to Interrogatories, No. 32. When the 1979 loan was taken out, the 1977 mortgage was retained and additionally a new mortgage was executed. Since defendant intended to secure the 1979 loan for $5,760.00 with two mortgages, one retained and one acquired, totalling $8,568.00, it was required to disclose this fact to plaintiff. Failure to do so was a material violation of the disclosure requirements of TLA giving plaintiff a continuing right to rescind the transaction.[3]

The purpose of the Act, as previously mentioned, is to assure credit customers a meaningful disclosure of credit terms so that they may readily compare alternative credit options. Here, a comparison of the actual terms of defendant's loan with those of any other potential creditor would have revealed the high cost of doing business with defendant. Not only did defendant charge the maximum finance charge allowed of 22.9%, defendant also encumbered plaintiff's home with mortgages in excess of the amount owed. Any other lender, even one charging the same finance charge as defendant, would take a mortgage only for the amount of the loan. The extra encumbrance imposed under the terms of defendant's loan would have been considered important by the average credit customer and this fact should have been revealed on the disclosure statement.

Defendant's failure to disclose the two separate mortgages is not cured by plaintiff's signature on a separate and confusing document to the effect that the prior mortgage was to continue. Although this document was executed on the same day as the loan, January 23, 1979, plaintiff claims that defendant neither gave her a copy of it nor a copy of any mortgage. In any event, even had plaintiff received copies of these documents, defendant's disclosure would still have been inadequate. The Act's regulations, 12 C.F.R. § 226.8(a), require that all mandated disclosures be made on one side of one piece of paper. *Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437 (3d Cir.1977). It is therefore immaterial that plaintiff could have been aware of the two mortgages by a review of other documents aside from the disclosure statement.

■ One final point deserves attention. Defendant argues that plaintiff should be precluded from presenting to the Court any violation of truth-in-lending based on the two security interests in the real estate because this particular item was not explicitly alleged in plaintiff's letter of rescission or complaint. The Court finds defendant's

---

**3.** Since this Court has found that the failure to disclose the retained security interest is a material non-disclosure giving plaintiff a right to rescind, this Court need not discuss whether defendant failed to make other disclosures under the Act or whether those disclosures were material.

position without merit since paragraph 21 of the complaint alleges a "failure to disclose the security interests in a clear and meaningful manner." This was sufficient to put defendant on notice of the substance of plaintiff's claim. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Right to Damages

▮▮▮ Section 1640 of TLA provides for statutory penalties equal to twice the finance charge up to a maximum of $1,000.00, plus a reasonable attorney's fee and costs, if the creditor fails to comply with the Act's disclosure requirement, including the requirements under § 1635 dealing with rescission. If a consumer rightfully exercises the right to rescind and the creditor fails to comply with its obligations under § 1635, the consumer is entitled to sue to effectuate rescission and obtain § 1640 damages. *Reid v. Liberty Consumer Discount Co. of Pennsylvania,* 484 F.Supp. 435 (E.D.Pa. 1980). The right to damages, however, is subject to a one year limitations period which starts running "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In the present case, plaintiff seeks damages for the defendant's violation in failing to respond to plaintiff's rescission letter dated March 19, 1981. Defendant has stipulated that it did not comply with the rescission requirements of § 1635. Under § 1635(b), defendant had twenty days to respond. Thus, defendant's violation occurred on the twenty-first day after receipt of plaintiff's letter, that is, April 9, 1981. Since plaintiff's complaint was filed March 22, 1982, her claim for damages is timely.

In view of plaintiff's valid rescission, as discussed above, and defendant's failure to respond, defendant is liable for statutory damages. Defendant will be assessed the maximum amount of $1,000.00, since twice the finance charge, $4,695.60, exceeds the § 1640 statutory limit. In addition, defendant will be liable for plaintiff's costs and a reasonable attorney's fee. *See* 15 U.S.C. § 1640(a)(3).

### C. Effect of Rescission

▮▮▮ TLA provides that when an obligor exercises his right to rescission, he or she is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon the rescission. Additionally, upon receiving notice of rescission, the creditor is to return any down payment or other monies it received from the customer and to take the necessary action to reflect the termination of the security interest. Thereafter, the debtor is to return to the creditor the property he or she received or its reasonable value. 15 U.S.C. § 1635(b).

In this case, plaintiff paid defendant $2,036.00 prior to her rescission. Under § 1635(b), this amount must be credited exclusively against the amount financed in 1979 of $3,412.20, and plaintiff is no longer liable for the finance charge of $2,347.80. Plaintiff, however, unsatisfied with what could be viewed as "half a loaf," seeks a declaration that her remaining indebtedness is extinguished. Plaintiff argues that the $2,036.00 that she paid on the transaction more than adequately compensates defendant for the value of the home improvement work that plaintiff received as a result of defendant's loan. Plaintiff claims that the work was defective and as such is not worth more than $2,036.00. Plaintiff has offered no proof in support of her claim, but even if she had, the Court sees no reason to penalize the lender for the unsatisfactory services performed by a third party. Since rescission is an equitable remedy, the Court may condition its allowance upon the borrower's return of funds advanced by the creditor. *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *LaGrove v. Johnson,* 534 F.2d 1360, 1361–62 (9th Cir.1976); *Palmer v. Wilson,* 502 F.2d 860, 862 (9th Cir.1974). The rescission and return of any monies paid to defendant is thus conditioned upon plaintiff's return of the remaining loan proceeds. In this way, the parties will be most nearly returned to their respective pre-transaction positions.

An appropriate Order will be entered.

## ORDER

AND NOW, TO WIT, this 31st day of January, 1983, for the reasons stated in the foregoing Memorandum, IT IS ORDERED as follows:

1. Plaintiff's motion for summary judgment is *granted* in the following respects:

(a) The transaction between plaintiff and defendant dated January 23, 1979, was validly rescinded on March 19, 1981;

(b) All monies plaintiff paid to defendant under the transaction prior to the rescission shall be credited exclusively against the amount financed of $3,412.20. Plaintiff shall return to defendant the difference between the amount she has already paid and the amount financed. Plaintiff may pay this amount to defendant in monthly installments of not less than $15.00;

(c) All security interests given or extended by plaintiff under the January 23, 1979 transaction are void. Defendant has twenty (20) days from the date of this Order to take the necessary action to reflect termination of all security interests;

(d) Defendant shall pay to plaintiff $1,000.00 in statutory damages under 15 U.S.C. § 1640 within twenty (20) days of the date of this Order, except that plaintiff may elect to have this amount credited against her remaining indebtedness to defendant for the unpaid balance of the amount financed;

(e) Plaintiff is directed to submit a petition for a reasonable attorney's fee and costs within twenty (20) days of the date of this Order.

2. Defendant's motion for summary judgment is *denied.*

3. Judgment is *entered* in favor of plaintiff Marion Bookhart and against defendant Mid-Penn Consumer Discount Co.