In re Gaye L. STERTEN, Debtor.

Gaye L. Sterten, Plaintiff,

v.

Option One Mortgage Corp.,
et al., Defendants.

Bankruptcy No. 03–14014–ELF.
Adversary No. 03–258.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 12, 2006.

381

David A. Scholl, Regional Bky. Center of PA, Newtown Square, PA, for Debtor.

**MEMORANDUM OPINION**

ERIC L. FRANK, Bankruptcy Judge.

**I.**

This adversary proceeding has an unusual procedural history which bears recitation.

On March 18, 2003, Plaintiff Gaye L. Sterten ("the Debtor") filed a voluntary Chapter 13 bankruptcy petition in this Court. On April 8, 2003, the Debtor commenced this adversary proceeding by filing a Complaint asserting claims arising from a consumer credit transaction which took place on February 22, 2001 ("the Transaction"). In the Transaction, the Debtor granted Option One Mortgage Corporation ("Option One") a mortgage against her residential real property.

In her Complaint, the Debtor sought damages, a declaration of rescission, and remedies for rescission under the Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and under Pennsylvania law. Named as defendants were Option One, Main Line Capital, Inc. ("Main Line Capital"), and Village Land Transfer, Inc. ("Village Land Transfer"), the lender, broker and title insurance agency in the subject loan transaction, respectively.

Trial of the adversary proceeding was scheduled on February 18, 2004. At that time, the parties advised the court that the Debtor's claims against Main Line Capital and Village Land Transfer had been settled. The trial proceeded on the Debtor's claims against Option One. After the conclusion of the trial, the parties submitted post-trial briefs. By Order dated October 12, 2005 and entered October 17, 2005, the court entered judgment in favor of Option One and against the Debtor.

On October 24, 2005, the Debtor filed a Motion to Alter or Amend this Court's Order of October 12, 2005. By Order dat-

ed January 4, 2006 and entered January 6, 2006, the court granted the Debtor's Motion ("the January 4, 2006 Bankruptcy Court Order"). In that Order, the court also:

- determined that the Transaction had been rescinded by the Debtor;
- directed Option One to take action to terminate its mortgage by February 7, 2006 and to deliver documentation to the Debtor by February 14, 2006 reflecting the termination of its mortgage;
- entered judgment in favor of the Debtor and against Option One in the amount of $2,000.00 pursuant to 15 U.S.C. § 1640(a)(2)(A);
- entered judgment in favor of the Debtor and against Option One for the Debtor's reasonable attorney's fees pursuant to 15 U.S.C. § 1640(a)(3), in an amount to be determined at a later hearing; and
- determined that Option One will hold an unsecured claim in the amount of the Debtor's repayment obligation pursuant to 12 C.F.R. § 226.23(d)(3) in an amount to be determined at a later hearing;
- scheduled a hearing ("the Remedy Hearing") to determine the amount and terms of the Debtor's repayment obligation pursuant to 12 C.F.R. § 226.23(d)(3) and the amount of attorney's fees and costs to be awarded pursuant to 15 U.S.C § 1640(a)(3).

On January 12, 2006, Option One filed a notice of appeal of the January 4, 2006 Bankruptcy Court Order. On January 17, 2006, the Debtor filed a Notice of Cross–Appeal. *See* Fed. R. Bankr.P. 8002(a).[1]

By Order dated March 2, 2006 and entered March 3, 2006, the District Court stayed the January 4, 2006 Bankruptcy Court Order. However, the District Court Order also directed that the bankruptcy court "shall proceed with the hearing scheduled for March 28, 2006, and may enter an appropriate order." Further, the District Court Order stated that "[n]othing in this Order shall preclude any further appeal on any final order that may be entered by the Bankruptcy Court." Finally, the District Court Order directed the parties to notify the District Court after this court enters an Order addressing "the matters to be addressed at the March 28, 2006 . . . hearing."

The March 28, 2006 hearing referenced by the District Court Order was the continued date for the Remedy Hearing, which had been scheduled by and prior to the appeal of the January 4, 2006 Bankruptcy Court Order. The Remedy Hearing was held on March 28, 2006.

## II.

In the January 4, 2006 Bankruptcy Court Order, the court determined that by her letter of January 23, 2003, the Debtor had validly exercised her right to rescind the Transaction. The merits of that decision are not before me; those issues are on appeal. My task is to determine how to implement the rescission of the Transaction. Judge Carey had not yet determined how to implement the rescission of the transaction when the appeal was taken.

1. All of the proceedings detailed above in the text took place before the Honorable Kevin J. Carey, initially acting in his capacity as a U.S. Bankruptcy Judge for the Eastern District of Pennsylvania. After his appointment as a U.S. Bankruptcy Judge for the District of Delaware in December 2005, Judge Carey continued to preside in this case by temporary assignment in this district. Judge Carey's involvement in this case terminated on February 14, 2006 when the undersigned was sworn in as a U.S. Bankruptcy Judge for the Eastern District of Pennsylvania.

The District Court's Order dated March 2, 2006 and entered March 3, 2006 directs me to do so.

The TILA provision governing the effect of a rescission of a transaction is found in 15 U.S.C. § 1635(b). It provides:

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

 The operation of § 1635(b) has been concisely summarized by one district court as follows:

[W]hen an obligor exercises his right to rescission, he is not liable for any finance or other charge and any security interest given by the obligor becomes void upon the rescission. 15 U.S.C. § 1635(b). Upon receipt of the rescission notice the creditor must return any down payment or other monies it received from the obligor and take the steps necessary to reflect the termination of the security interest. Thereafter, the obligor is to return to the creditor the property he received or its reasonable value. If the creditor does not take possession of the property within twenty days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

*Celona v. Equitable National Bank,* 98 B.R. 705, 707 (E.D.Pa.1989).[2]

**2.** To implement TILA, Congress has delegated to the Federal Reserve Board broad power to promulgate regulations regarding the interpretation and implementation of the Act. *See* 15 U.S.C. § 1604(a). The Federal Reserve Board regulations are set forth in Regulation Z. *See* 12 C.F.R. §§ 226.1 *et seq.* The Federal Reserve Board's regulations are entitled to deference by the courts. *See Anderson Brothers Ford v. Valencia,* 452 U.S. 205, 219 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565–67 100 S.Ct. 790, 797–98, 63 L.Ed.2d 22 (1980). Regulation Z also addresses the effect of rescission and provides as follows:

Effects of rescission.
(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
(3) If the creditor has delivered any money or property, the consumer may retain pos-

As one commentator has observed, since the enactment of TILA, there has been a judicial debate concerning the meaning of 15 U.S.C. § 1635(b) and the degree to which courts have equitable discretion to control the precise manner in which the rescission remedy is implemented:

> [S]ome courts flexed their equitable muscles in granting rescission under the Act by conditioning it on the consumer's tender of loan proceeds, even in the absence of any statutory authorization to do so. Courts that have exercised their equitable powers in this manner have generally done so out of concern that the statutory scheme would impose inequitably harsh forfeitures on creditors. While courts have virtually always recognized the immediate invalidation of interest and finance charges, they have frequently worried that rescission of the security interest would leave creditors unable to collect the principal. A tiny minority of courts, championing the consumer protection purpose of the statute, has been less concerned with creditors, and has hewed more closely to the statutory scheme by refusing to condition rescission on tender.

Robert Murken, *Can't Get No Satisfaction? Revising How Courts Rescind Home Equity Loans under the Truth in Lending Act*, 77 Temp. L.Rev. 457, 465 (2004) (footnotes omitted) ("Murken").

In this bankruptcy district, Judge Raslavich has followed the majority view and squarely held that after a rescission under TILA, "the voiding of a mortgage may be conditioned on the debtor tendering back to the creditor the consideration underlying the transaction." *In re Apaydin*, 201 B.R. 716, 718 (Bankr.E.D.Pa.1996), *followed in In re Armstrong*, 288 B.R. 404 (Bankr.E.D.Pa.2003). Cases following the majority view have relied upon early TILA caselaw, the 1980 amendment to § 1635(b) as well as 12 C.F.R. § 226.23(d)(4). The 1980 amendment to the statute and Regulation Z § 226.23(d)(4) both expressly provide authority to the court to modify the rescission procedures set forth in the statute and regulation. *E.g., Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir.1992) (finding legislative history expressed Congress' intent to impose equitable conditions at any time during the rescission process); *accord, Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir.2003), cert. *denied*, 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004).

In contrast, in *In re Williams*, 291 B.R. 636 (Bankr.E.D.Pa.2003), Chief Judge Sigmund held, based upon her reading of the plain language of the statute (reinforced by her reading of Regulation Z), that TILA rescission is a purposeful deviation from the traditional common law rules of rescission and that under TILA, the voiding of a creditor's security interest occurs before the obligor must tender what is owed to the creditor. Thus, "while courts can modify the procedures set forth in § 1635(b), they cannot modify the voiding of a creditor's security interest." *Id.* at

---

session until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23(d).

658. Even in *In re Williams,* however, the court determined that the exercise of the right to rescind under TILA in a bankruptcy environment mandated the exercise of a certain degree of equitable discretion:

> [W]hile I refuse to condition rescission on tender of payment, I will prescribe the procedures by which BankOne's claim shall be treated in this bankruptcy case to ensure that Debtor satisfies her tender obligation to the extent to which she is legally obligated. In so doing, the legislative objectives of both federal statutes are harmonized, *i.e.,* the parties are brought to the status quo ante consistent with § 1635(b) and § 226.23(d) and the Debtor does not forfeit her bankruptcy rights. To this end, I shall order the Debtor to file an amended plan that classifies BankOne's unsecured claim separately and provides for the amount I have now liquidated, *i.e.,* $9,574.74, in full over the remaining [chapter 13] plan life.

*Id.* at 662.

During his tenure in this district, Judge Carey, steered a course somewhere between *Apaydin* and *Williams.* In his initial decision in *In re Bell,* 309 B.R. 139, 167 (Bankr.E.D.Pa.2004), Judge Carey stated his agreement with the principle enunciated in *Williams* that if a transaction has been rescinded under TILA, courts cannot modify the voiding of the creditor's security interest. On reconsideration, Judge Carey declined to employ the *Williams* approach of requiring that the Debtor's chapter 13 plan provide for full payment of the amount required to be tendered to the creditor by the debtor-consumer. Rather, Judge Carey concluded that "the Debtor should have a reasonable time for repayment, even if such period exceeds the five-year period imposed by 11 U.S.C. § 1322(d)." *In re Bell,* 314 B.R. 54, 62 (Bankr.E.D.Pa.2004) (*"Bell II "*).

There is also a line of cases in which courts have required the creditor to satisfy its security interest and, in the bankruptcy context, treated the consumer's tender obligation as an ordinary unsecured debt capable of being discharged in the bankruptcy case. *Williams v. Gelt Financial Corp.,* 237 B.R. 590 (E.D.Pa.1999); *Celona; In re Jackson,* 245 B.R. 23 (Bankr.E.D.Pa. 2000) (collecting cases).[3] *See also Gill v. Mid–Penn Consumer Discount Co.,* 671 F.Supp. 1021, 1026 (E.D.Pa.1987) (holding in non-bankruptcy context that the "creditor's failure to comply with such a valid rescission request obviates the consumer's [tender] obligation"), *aff'd,* 853 F.2d 917 (3d Cir.1988). This line of cases may be conceptualized as manifesting the court's exercise of its discretion to modify the statutory rescission procedure in order to impose a further sanction on the creditor due to the equities in the particular case. In a sense, this line is at the other end of the spectrum from the majority of cases in which courts have deviated from the statutory rescission template in order to prevent what the court perceives to be an unduly harsh result to the creditor or a windfall to the consumer.

---

**3.** The *Jackson* court identified the available remedies for a valid rescission that has been "ignored" by the creditor as follows:

> (1) termination of the holder's security interest in the borrower's residence; (2) statutory damages for failing to properly respond to the rescission demand; (3) a penalty measured by recoupment against the remaining unsecured claim on account of the original disclosure violations; (4) elimination of all finance charges; (5) where equitable to do so, elimination of the debtor's entire obligation to the creditor; (6) recovery of all payments made; and (7) recovery of reasonable attorney's fees and costs by the successful borrower's counsel.

245 B.R. at 33–34.

With this summary review of the caselaw as background,[4] I turn to the specific issues presented in this case.

### III.

### A.

■ Under 15 U.S.C. § 1635(b), following the rescission of a transaction, in addition to the obligation to terminate its security interest within twenty (20) days, the creditor is also obliged, within the same time frame, to "return to the obligor any money or property given as earnest money, downpayment, or otherwise." *Accord,* 12 C.F.R. § 226.23(d)(3). Since the consumer's obligation to tender arises after the creditor's performance of its obligations following rescission (unless the procedures are modified by the court), the literal language of the statute and regulation suggest that the creditor might have an obligation to return to the consumer all of the payments made prior to the rescission of the transaction before the consumer then tenders back the money or property received in the transaction. Notwithstanding the statutory text, courts have permitted creditors to set off the amounts they are obliged to return against the (usually higher) amount of the consumer's tender obligation. *E.g., Harris v. Tower Loan of Mississippi,* 609 F.2d 120, 123 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980). This practical procedure has been described as "sensible" and "appropriate." D. Edwin Schmelzer, *The Right of Recision under Truth in Lending* in Ralph J. Rohner & Fred H. Miller, *Truth in Lending* 650 (Robert A. Cook, Alvin C. Harrel & Elizabeth Huber, eds., American Bar Association 2000) ("Rohner").[5]

In this case, at the March 28, 2006 hearing, the parties reported that they had agreed upon the amount of the Debtor's tender obligation under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3). The parties have agreed that after the setoff is calculated and all adjustments are made,[6] the amount that the Debtor is obliged to tender is $118,819.16 ("the Repayment Amount"). Notes of Testimony (March 28, 2006) at 12 ("N.T."). The parties also have agreed that the Debtor's reasonable attorney's fees to be awarded under 15 U.S.C. § 1640(a)(3) is $19,500.00. *Id.* at 12–13.[7]

---

4. There is a substantial body of caselaw outside of this jurisdiction which also addresses the effect of a TILA rescission and the court's equitable power to modify the statutory procedure. For a discussion of the caselaw, *see Murken, supra.*

5. Rohner provides a simple illustration of the use of set off: "[I]f the consumer has paid charges and interest totaling $600 on a $10,000 loan, the parties may simply settle out for $9,400 to be paid by the consumer." *Rohner* at 650 (footnote omitted).

6. The adjustment includes statutory damages of $2,000 pursuant to 15 U.S.C. § 1640(a)(2)(A)(iii) based on Option One's failure to comply with its rescission obligations following receipt of the Debtor's notice of rescission. It is not clear to me whether it includes a recoupment claim for the disclosure violation (which is a remedy distinct from statutory damages for Option One's failure to perform timely its rescission obligations). *See n. 3, supra; accord, In re Steinbrecher,* 110 B.R. 155, 162 (Bankr.E.D.Pa. 1990) (per Fox, J.). However, the parties have stipulated to the amount of the Debtor's tender obligation, so further analysis is unnecessary.

7. At the hearing, the parties reported these terms as a tentative agreement. The finalized agreement was to be submitted through a written stipulation filed prior to a continued hearing scheduled for April 18, 2006. The written stipulation was not filed and, due to a scheduling error, the April 18, 2006 hearing was not held. However, the parties have confirmed that the tentative agreement reported on the record on March 28, 2006 was finalized.

In addition, the Debtor agrees that the actual satisfaction of Option One's mortgage in the department of records may be deferred pending the Debtor's tender of the Repayment Amount, provided that the court grants the Debtor an extended instalment period in which to tender the money. *Id.* at 13–14, 15–16, 21. In other words, the Debtor agrees that the termination of Option One's mortgage may be conditioned upon her tender of the Repayment Amount (subject to certain conditions). This concession by the Debtor makes it unnecessary for me to delve further into the *Apaydin–Williams–Bell* caselaw thicket.[8]

The issue, then, is whether I should exercise the discretion I have under 15 U.S.C. § 1635(b) to permit the Debtor to tender the Repayment Amount in instalments and, if so, over what term and at what interest rate, if any.

■ Generally, given the broad discretion that courts have exercised under 15 U.S.C. § 1635(b) and, in particular, the fact that the common judicial practice of deferring a creditor's duty to terminate its security interest until the consumer has tendered the money or property received in a rescinded transaction is itself a modification of the presumptive rescission process set forth in the statute in order to protect the interests of the creditor,[9] I find the concept of permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction to be a balanced, equitable approach. This approach finds support in *Bell II* and other caselaw. *See Shepeard*

---

8. If I were obliged to make a decision on the appropriate rescission procedures and if I were to follow the majority approach exemplified by *In re Apaydin,* this is the type of case in which conditioning termination of Option One's mortgage on repayment of the Debtor's payment obligation would be an appropriate exercise of judicial discretion. The loan transaction in this case involved a principal amount of $132,000 and a finance charge in excess of $300,000 to be paid over the 30 year term of the loan. In its initial decision, the court concluded that Option One had understated the loan's finance charge by $57 based on "appraisal mark-up fee" of $25 and notary fee overcharges of $32. However, the court also found the disclosed finance charge to be legally accurate under TILA pursuant to the "tolerances for accuracy" provision of 15 U.S.C. § 1605(f). *See* Court's Memorandum dated January 4, 2006, slip op. at 3. On reconsideration, the court held that Option One had waived the § 1605(f) defense by failing to plead it as an affirmative defense or otherwise having raised it before or during trial. Given, the modest nature of the TILA violation in this case, judicial intervention to protect the creditor from a potentially unduly harsh result would be justifiable. *Accord,* Murken, 77 Temp. L.Rev. at 497–98.

9. One commentator is critical of the regularity with which courts have modified the statutory procedure in 15 U.S.C. § 1635(b):

> [C]ourts should not render § 1635(b)'s rescission scheme mere surplusage by modifying it more often than not. A point so obvious that it almost does not bear repetition is that courts must take statutory language extremely seriously. While § 1635(b) doubtless gives courts the authority to modify its process, this does not change the fact that the section sets forth a process to be followed normally. That Congress went to lengths to prescribe a new process for rescission, in explicit derogation of the common law, implies a need to carry out the statute's provisions in all but exceptional circumstances. Furthermore, it must be incumbent on the creditor to prove why a court should modify the § 1635(b) process. It would be the height of judicial disregard for legislative power to take any other position: the statutory language of § 1635(b) exists for the protection of consumers; consumers should not have to bear the burden of showing why they should benefit from its provisions. Rather, an offending creditor must demonstrate why it should not be subject to § 1635(b)'s process.

Murken, 77 Temp. L.Rev. at 499.

*v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295 (D.Del.1990) (permitting consumer to repay $11,361.58 in monthly instalments of $119); *Mayfield v. Vanguard Savings & Loan Association,* 710 F.Supp. 143 (E.D.Pa.1989) (permitting consumer to repay $16,113.62 in monthly instalments of $117); *Bookhart v. Mid–Penn Consumer Discount Co.,* 559 F.Supp. 208 (E.D.Pa.1983) (permitting consumer to repay $3,412.20 in monthly instalments of $15).[10]

■ In this case, I accept the Debtor's proffer that the appropriate procedure for implementing the rescission of the transaction is to permit Option One to retain its mortgage pending the completion of the Debtor's performance of her repayment obligation under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3) through instalment payments of the Repayment Amount.[11] The next step is to determine the terms on which the Debtor will make the repayment.

**B.**

■ The Debtor asserts that the court should exercise its discretion to permit the Debtor to tender the Repayment Amount in 360 monthly instalments.[12] The Debtor agrees that Option One should receive interest on the Repayment Amount. The Debtor requests that the court choose 6% per annum, which is the legal rate of interest for judgments in Pennsylvania. *See* 41 P.S. § 202. This would result in monthly payments of $712.00. (N.T. 15).[13] The Debtor acknowledges that another potential index for choosing an interest rate is that found in 41 P.S. § 301 and employed to set the maximum rates for residential mortgages in Pennsylvania: the Monthly Index of Long Term United States Government Bond Yields for the second preceding calendar month plus an additional two and one-half per cent per annum rounded off to the nearest quarter of one per cent per annum ("the Act 6 Rate").[14] At the time of the March 28, 2006 hearing,

**10.** In *Shepeard, Mayfield* and *Bookhart,* the court ordered unconditional termination of the creditor's security interest at the time it permitted an instalment payout of the consumer's tender obligation. Obviously, permitting the creditor to retain its security interest pending the completion of the instalment payments, as is proposed by the Debtor in this case, is a less drastic remedy than that granted in *Shepeard, Mayfield* and *Bookhart.*

**11.** I am mindful that Judge Carey's Order of January 4, 2006 Order determined that Option One's claim would be unsecured; it did not condition termination of Option One's mortgage on tender of the Repayment Amount. Ordinarily, pursuant to the law of the case doctrine, that determination would not be disturbed. However, to the extent that the Order determined Option One's claim to be unsecured, it provided a remedy to the Debtor. In effect, the Debtor has agreed to waive the remedy which she was awarded in this litigation. Consequently, I do not believe that my determination runs afoul of the law of this case. *See generally International Poultry*

*Processors, Inc. v. Wampler Foods, Inc.,* 1999 WL 213369, at * 1–2 (E.D.Pa. April 8, 1999) (there are circumstances that may warrant a departure from the law of the case doctrine which, in any event is a prudential doctrine and not one that limits a court's power).

**12.** In her written submission prior to the March 28, 2006 hearing, the Debtor proposed a repayment period of 180 months. At the hearing, the Debtor's position was that a 180 month term would result in a monthly payment that she cannot afford. Option One did not seem to take issue with the Debtor's position that she cannot afford a repayment term of 180 months.

**13.** My calculation is that the exact monthly payment would be $712.38.

**14.** The term "the Act 6 Rate" is used because the Pennsylvania statute of which 41 P.S. § 301 is part, is commonly referred to as "Act 6 of 1974." *E.g., In re DiPietro,* 135 B.R. 773, 778 (Bankr.E.D.Pa.1992).

the Act 6 Rate was 7% per annum. 36 *Pa. Bulletin* 921, 962 (Feb. 25, 2006). At that 7% rate, the monthly payment over 360 months would be $790.51. Currently (as of October 2006), the Act 6 Rate is 7.5% per annum. *See 36 Pa. Bulletin* 5861, 5882–5883 (Sept. 23, 2006).

A third possible approach would be to analogize the "terming out" of the Repayment Amount to the payment of "present value" of an allowed secured claim under 11 U.S.C. § 1325(a)(5)(B)(ii). If the analogy is valid, the appropriate interest rate would be the same as that used in bankruptcy rehabilitative or reorganization plans which modify and pay off allowed secured claims. In *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), the Supreme Court rejected methodologies known as the "coerced loan approach," the "cost of funds approach" and the "presumptive contract rate approach." *Id.* at 477, 124 S.Ct. at 1960. The Court adopted the "formula approach" in which the bankruptcy court begins with the national prime rate as reported in the daily press and adjusts it to account for the risk of nonpayment. *Id.* at 478–79, 124 S.Ct. at 1961. The prime rate as of October 2006 is 8.25%. *See http:// research.stlouisfed.org/fred2* (link to Bank Prime Loan Rate Change). As of March 28, 2006, the prime rate was 7.75%. *Id.*

At the March 28, 2006 hearing, Option One's position was that a 360 month repayment term seemed "excessive," but it did not take a definitive position as to an appropriate alternative length of term. As for the appropriate rate of interest, Option One appeared to recommend 10.05% the most recent rate under the terms of the adjustable rate note which was secured by the mortgage in the rescinded transaction. *See* N.T. 17–19.[15]

■ As I determine an appropriate and equitable mechanism for effectuating the rescission of the Transaction in this case, I observe that the decision appears to be one that involves harmonizing a number of potentially competing considerations. As such, it appears to be a discretionary decision that is not especially dependent upon past precedent; it is more akin to factfinding. *See In re Glunk,* 342 B.R. 717, 732 (Bankr.E.D.Pa.2006) (citing A. Scalia, *The Rule of Law As a Law of Rules,* 56 U. Chi. L.Rev. 1175, 1180–81 (1989); *In re Crater,* 286 B.R. 756, 772 (Bankr.D.Ariz.2002)).

On the one hand, a finding has been made by this court that the Debtor was entitled to rescind the Transaction. The Debtor exercised her right to rescind and Option One failed to comply with its statutory obligation to implement the rescission. The consumer protective purposes of TILA and its private attorney general system of enforcement support the fashioning of a remedy that will provide effective relief for this consumer who has successfully invoked her rights under the statute. These considerations would lead me to restructure the mortgage repayment terms in a fashion as to maximize the likelihood that the Debtor will be able to afford the monthly instalment amount for satisfaction of the Repayment Amount, even though it may result in a lengthy repayment period. The same considerations, supplemented by a concept inherent in a successful rescission—that the rescission deprives the lender of any entitlement to the rate of interest it contracted for in the rescinded transaction—also suggest that the appropriate interest rate should be nothing more than 6%, the legal rate of interest in Pennsylva-

---

**15.** I have reviewed the exhibits admitted during trial of this adversary proceeding on February 18, 2004 and confirmed that the note was an adjustable rate note. *See* Trial Exhibit OOM–6.

nia. On the other hand, although the court held that there was a material violation of TILA, as explained earlier, see n. 8, supra, it was not a transaction that involved any pervasive overreaching or irregularities. The nature of the statutory violation in this case would support a repayment period and an interest rate more favorable to Option One.

After weighing these competing considerations, I conclude that the Debtor should repay the Repayment Amount in monthly instalments of $790.00. From her presentation at the March 28, 2006 hearing, that is the payment level that I infer is at the upper end of what she believes she can afford. I also conclude that the repayment term should be from November 2006 to March 2031, which was the scheduled maturity date of the rescinded loan. This results in a payment term of 302 months.

I find the terms described above equitable because they provide the Debtor with a realistic opportunity to satisfy the Repayment Obligation and fulfill her statutory repayment obligation under TILA. Simultaneously, the terms simulate the long term lending relationship to which the parties had agreed and thus, should not be burdensome or oppressive to Option One, particularly since Option One will retain its lien position. Ultimately, the main consequences of the rescission of the transaction are (1) the fixing of the interest rate at a level which is but several percentage points below the most recent contractual rate derived from the rate index in the original adjustable loan note [16] and (2) the extinguishment of the Debtor's obligation to comply with affirmative covenants that are set forth in the mortgage. I find this impact on Option One to be proportionate in a transaction rescinded under TILA.

An order consistent with this Memorandum Opinion will be entered.[17]

## ORDER

**AND NOW,** for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** and **DETERMINED** that the court's Order of January 4, 2006 is hereby **SUPPLEMENTED** as follows:

1. Pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(3), the Plaintiff is obliged to tender to Defendant Option One Mortgage Corp. ("Option One") the sum of $118,819.16 ("the Repayment Amount").

2. The Debtor may repay the Repayment Amount in 302 monthly instalments commencing November 1, 2006 in the amount of $790.00.

3. Option One's obligation under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2) to mark satisfied its mortgage on the Plaintiff's real property located at 42 Oakmont Place, Media, PA 19063 is conditioned and deferred until the Plaintiff has performed her obligations pursuant to Paragraph 2 above.

4. Pursuant to 15 U.S.C. § 1640(a)(3), the Plaintiff is awarded reasonable attorney's fees in the amount of $19,500.00.

---

**16.** The repayment of the Repayment Amount through 302 monthly instalments of $790.00 results in an interest rate of 6.36%.

**17.** Although the merits of this case are on appeal, and perhaps the Order accompanying this Memorandum Opinion will also be appealed, it would be prudent for the Debtor to commence making the monthly instalments in November 2006, while the appeal is pending.