2015 PA Super 219

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF AMERIQUEST MORTGAGE SECURITIES, INC., ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2005-R2, | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| MICHAEL S. GARDNER, | : : | |
| Appellee | : | No. 3421 EDA 2014 |

Appeal from the Judgment Entered September 23, 2014
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): January Term 2008 No. 03467

BEFORE:    PANELLA, WECHT, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:    **FILED OCTOBER 14, 2015**

Deutsche Bank National Trust Company, as Trustee for the Registered

Holders of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through

Certificates, Series 2005-R2 (Deutsche Bank), appeals from the judgment

entered in favor of Michael S. Gardner in this mortgage foreclosure action.

We vacate the judgment and the judgment order in equity upon which it was

based and remand with instructions.

The trial court offered the following summary of the case.

> Gardner lives in a residence he owns at 9887 Verree Road,
> Philadelphia, PA.  In June 2003, he signed a mortgage on his
> home and borrowed $140,000 from Ameriquest.  In January
> 2005, Gardner and Ameriquest refinanced in the amount of
> $185,400, adding $45,400 to the loan.  A second mortgage was

* Retired Senior Judge assigned to the Superior Court.

signed. At closing Ameriquest gave Gardner a federal H-8 Form to advise Gardner of his rescission rights.

At the early stages of the economic downturn in October 2007 and facing economic pressure, Gardner applied to rescind the refinance agreement and stopped repaying the loan. He learned he had not been given correct disclosure of his rescission rights, and this had taken place at a time when Ameriquest's mortgage practices were coming under national scrutiny. Hundreds of actions had been filed against Ameriquest under the [Truth in Lending Act (TILA)], and Gardner added his own complaint in the U.S. Court for the Eastern District of Pennsylvania. Gardner's action to enforce his rescission rights for the refinance loan was transferred and consolidated with an ongoing TILA class action against Ameriquest in the U.S. Court for the Northern District of Illinois. When this class action settled, Gardner waived his direct TILA claims against Ameriquest and kept the right to defend himself against mortgage foreclosure. Gardner also preserved his right to assert an affirmative defense based on inadequate notice.

* * *

On January 12, 2008, Deutsche Bank, trustee for Ameriquest, filed this mortgage foreclosure action against [] Gardner. This case was in limbo for five years until the federal class action settled.

A bench trial took place on April 14, 2014. Gardner represented himself *pro se*. Findings of fact and conclusions of law were entered on April 28, 2014. Among the points: 1) Deutsche Bank had standing as an Ameriquest trustee to bring this mortgage foreclosure action…; 2) Ameriquest did not comply with the TILA requirements, and therefore, Gardner's affirmative defense was valid and prevented foreclosure; 3) Gardner was entitled to rescind his refinance loan, but only up to the $45,400 which was added during the refinance, and so was not permitted to rescind the original $140,000 loan; and 4) Gardner's home remains mortgaged to Deutsche Bank under terms of the first mortgage in the amount of $140,000.

Trial Court Opinion, 3/26/2015, at 1-3.

Deutsche Bank timely filed a post-trial motion. By order of September 5, 2014, the trial court denied the motion without prejudice for Deutsche Bank to seek in an *in personam* action recovery of the $45,400 Gardner received pursuant the refinance agreement.[1] Judgment was entered on September 23, 2014, and Deutsche Bank timely filed a notice of appeal. Both Deutsche Bank and the trial court complied with Pa.R.A.P. 1925.

Deutsche Bank presents this Court with the following questions:

> A. Whether the trial court committed an error of law in holding that Gardner's right to rescind his 2005 loan refinance transaction with Deutsche Bank's predecessor in interest pursuant to [TILA] was extended from three days to three years because, at closing, Gardner received the incorrect model Federal Reserve Board form notice of that right to rescind, notwithstanding that the form delivered to Gardner "clearly and conspicuously" informed him of his right to rescind the refinance transaction at issue?
>
> B. Whether the trial court committed an error of law or abused its discretion in structuring its Judgment Order in Equity to permit Gardner to rescind his 2005 loan refinance transaction where it (1) failed to require Gardner to tender back to Deutsche Bank all funds received by Gardner or expended on his behalf following the rescission, as required by TILA, and (2) refused to condition Gardner's ability to rescind on his first tendering to Deutsche Bank the funds necessary to make it whole, given the evidence that Gardner has no ability to repay Deutsche Bank?

Deutsche Bank's Brief at 2-3 (trial court answers omitted).

---

[1] The trial court initially denied the post-trial motion by order of September 3, 2014. However, its order of September 5th vacated the earlier order and added the caveat about recovering the additional money in another action.

"In reviewing a decision of a court after a non-jury trial, we will reverse the trial court only if its findings are predicated on an error of law or are unsupported by competent evidence in the record." *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa. Super. 2015) (quoting *Wallace v. Pastore*, 742 A.2d 1090, 1092 (Pa. Super. 1999)).

In construing the federal statutes and regulations at issue in this case, we bear in mind that "[w]e are not bound by decisions of the federal courts, but we may rely on them for persuasive authority." *EMC Mortgage, LLC v. Biddle*, 114 A.3d 1057, 1064 n.6 (Pa. Super. 2015). Furthermore, "whenever possible, Pennsylvania courts follow the Third Circuit [courts] so that litigants do not improperly walk across the street to achieve a different result in federal court than would be obtained in state court." *Parr v. Ford Motor Co.*, 109 A.3d 682, 693 n.8 (Pa. Super. 2014) (*en banc*) (internal citations and quotation marks omitted).

We begin with an overview of TILA.

Congress enacted TILA in 1968 to promote the informed use of credit. To achieve this goal, TILA sought to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. A consumer who does not receive the requisite disclosures regarding a loan secured by his principal dwelling may rescind the loan agreement.

Consumers have an absolute right to rescind for three business days after closing on the loan. To exercise this no questions asked right of rescission, the obligor on the mortgage

note must simply notify the creditor of his intention to do so, consistent with the applicable regulations. No court filing is necessary to effectuate this right.

If the lender fails to make the requisite disclosures before the loan commences, the three-day restriction on the right of rescission does not begin to run. A consumer who does not receive the requisite disclosures has a right to rescind that lasts until three days after the disclosures are received. That right of rescission is not perpetual, however, even if the consumer never receives all of the requisite disclosures. The right expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first.

**Sherzer v. Homestar Mortgage Servs.**, 707 F.3d 255, 255-56 (3d Cir. 2013) (internal citations and quotation marks omitted).

The Board of Governors of the Federal Reserve System created the H-8, a model form for general usage by lenders to satisfy the notice provision of TILA. **Porter v. Mid-Penn Consumer Discount Co.**, 961 F.2d 1066, 1067 (3d Cir. 1992). However, it is not necessary that any particular form is used because "the law does not require an ideal notice of rescission rights, just a clear, accurate, and conspicuous one." **Id.** at 1076.

There are exceptions to the right to rescind. The portion of the Code of Federal Regulations implementing TILA, known as Regulation Z, provides, in relevant part, as follows:

The right to rescind does not apply to… [a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned

unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

12 C.F.R. § 226.23(f)(2). In other words, with a TILA violation in the context of a refinance loan, "a borrower may rescind the 'new money' portion… but not the 'old money' portion" of the loan. **Porter**, 961 F.2d at 1074. "Because rescission rights in 'refinancing' situations differ from those applicable in new-loan situations, the Board promulgated, in addition to the H-8, a model rescission form H-9 for partially exempt 'refinancings.'" **Id.**

These differences in rescission rights are demonstrated by the comparison of the H-8 and H-9 model forms. The H-8 model form provides, *inter alia*, as follows:

> You are entering into **a transaction** that will result in a [mortgage/lien/security interest] [on/in] your home. …
>
> **If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled**. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
>
> You may keep **any money or property** we have given you until we have done the things mentioned above, but **you must then offer to return the money or property**. …

12 C.F.R. Pt. 226, App. H (emphasis added). In contrast, the H-9 model form includes the following language:

You are entering into **a new transaction to increase the amount of credit previously provided** to you. Your home is the security for this new transaction. …

**If you cancel this new transaction, it will not affect any amount that you presently owe**. **Your home is the security for that amount.** Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure **the increase of credit**. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep **any money we have given you in this new transaction** until we have done the things mentioned above, but you must then offer to return the money….

*Id.* (emphasis added).

Deutsche Bank's first claim of error presents us with the question of whether the disclosures in the H-8 form adequately inform a borrower of his or her rescission rights in the context of a refinance loan with the same lender. "Under both TILA itself and Regulation Z, the test is whether the H-8 that [the lender] provided constituted a clear notice of [the borrower's] right to rescind the new-money portion of the loan." *Porter*, 961 F.2d at 1076.

In *Porter*, as in the instant case, the lender provided the H-8, rather than the H-9, model form for a refinance loan. The Third Circuit held that there were two plausible readings of the H-8 notice in the refinancing context. On the one hand, "[o]ne could read the notice as saying that if [the borrower] elected to rescind, the new money portion would be rescinded and the old loan document (and mortgage) would remain in effect." *Id.* at 1077.

Thus, upon rescission only "the new security interest would be voided," and the borrower need return only "the new money," "leaving the parties where they were before this latest transaction." *Id.*

However, one could also read the H-8 notice as indicating that the borrower could "rescind the whole new security interest, covering both old and new money." *Id.* Under this interpretation, the borrower upon rescission "would have to return both old and new money, and both old and new security interests would be satisfied." *Id.* Thus, because a refinance borrower "may want to rescind the new-money portion of the loan but may not have the funds readily accessible to pay back the old loan immediately," the unclear H-8 notice could dissuade him or her from exercising his or her right to rescind. *Id.* at 1077-78.

Because "both readings are sensible, yet they have quite different legal implications," the Third Circuit held that "the H-8 did not provide Porter with a clear notice of what her right to rescind entailed." *Id.* at 1077. The court further stated: "More generally, we hold that a lender violates TILA by providing the H-8 notice when the borrower's right to rescind is limited by the 'refinancing' exception...." *Id.*

The trial court in the instant case was persuaded by the reasoning in **Porter**, and held that the H-8 notice supplied by Deutsche Bank's predecessor did not inform Gardner clearly that his "existing first mortgage

is unaffected by timely rescission of a second mortgage." Trial Court Opinion, 3/26/2015, at 8. Because the disclosures were inadequate, the trial court held that Gardner had three years to exercise his rescission rights. *Id.* (citing 15 U.S.C. § 1635(f)(i)(1)(B)). As the refinance agreement was made in January 2005, and Gardner filed his rescission notice in October 2007, the trial court determined that Gardner timely exercised his right to rescind the refinance loan. *Id.*

We agree with the Third Circuit's reasoning and legal conclusions stated in *Porter*: the ambiguity created by the language of the H-8 notice in the context of a refinance loan constitutes a violation of TILA, extending the duration of the borrower's rescission rights from three days to three years. Although Deutsche Bank correctly notes that other federal circuit courts have reached the opposite conclusion,[2] we find the Third Circuit's analysis more persuasive. Accordingly, the trial court did not err in determining that Gardner's right to rescind the 2005 refinance mortgage was extended to three years. Deutsche Bank's first issue entitles it to no relief.

---

[2] *See* Deutsche Bank's Brief at 27-30 (discussing *Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232 (4th Cir. 2011) ("Model Form H−8 includes all of the information required by TILA and Regulation Z to advise borrowers of the right to rescind a consumer credit transaction, including a refinancing transaction[.])"; *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12 (1st Cir. 2007) (same); *Mills v. EquiCredit Corp.*, 172 F. App'x 652 (6th Cir. 2006); *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996) (same)).

With its second issue, Deutsche Bank argues that, even if Gardner's rescission rights were extended based upon a TILA violation, the trial court erred in permitting him to rescind the 2005 refinance agreement without tendering back the $45,400 that Gardner received in cash when the 2005 loan closed.[3] Deutsche Bank's Brief at 35. We agree.

When a party seeks the equitable "remedy of rescission, part and parcel of the award of that remedy is returning the parties, to the extent possible, to the status *quo ante*." *In re Fowler*, 425 B.R. 157, 204 n.65 (Bankr. E.D. Pa. 2010) (citing *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 766 (Pa. Super. 1999) ("It is well known that the purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction.")). "[R]escission traditionally required either that the rescinding party return what he received before a rescission could be effected (rescission at law), or else that a court affirmatively decree rescission (rescission in equity)." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 793 (2015).

---

[3] Deutsche Bank also claims that the trial court should have ordered Gardner to tender $26,702.55 paid "to third parties in the course of servicing the Mortgage." Deutsche Bank's Brief at 35, 37. However, Deutsche Bank does not explain why the unwinding of the refinance transaction, and reinstatement of the original mortgage, requires tender of taxes and insurance which it would have paid under the original 2003 loan. The rescission process is not a vehicle by which Deutsche Bank may recoup those funds.

However, TILA "alters the traditional process for unwinding such a unilaterally rescinded transaction[.]" *Id.* Regulation Z provides the following rescission procedure.

**(d) Effects of rescission.**

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23(d).

Thus, the default procedure once notice of rescission has been honored by the lender or validated by a court,[4] is for the lender to take steps necessary to reflect termination of the security interest and to return any property or money given by the borrower before the borrower's duty to tender loan proceeds back to the lender is triggered. Subsection (d)(4) empowers the court to alter or reorder the procedure of the rescission.

"Pursuant to [TILA], courts have the discretion to condition rescission on tender by the borrower of the property he has received from the lender. [C]ourts have denied rescission where the borrowers were unable to tender payment of the loan amount."[5] *Jobe v. Argent Mortgage Co., LLC*, 373 F.

---

[4] "The [consumer's rescission] notice itself is merely procedural, serving as a non-judicial method by which a party indicates his or her intent to disaffirm the contract." *Bertram v. Beneficial Consumer Disc. Co.*, 286 F. Supp. 2d 453, 459 (M.D. Pa. 2003). "Until the creditor honors the notice, or a court certifies its validity, it is without legal effect, and serves only to preserve the consumer's ability to pursue the remedies provided under the statute." *Id.*

[5] The Seventh Circuit has taken an even stronger position:

Tender is inherently part of rescission, not an occasional effect of it. For this reason, … rescission is often unavailable to consumers because they are unable to return unpaid principal as a result of decreased property value, poor housing market or any number of reasons. Accordingly, … a borrower's inability to satisfy his tender obligations may make rescission, even if based on a TILA violation, impossible. Ultimately, rescission is fundamentally meant to unwind the entire transaction, not merely change the amount of the loan. If the [lender's] security interest remains intact and the loan continues to exist or if

App'x 260, 262 (3d Cir. 2010) (internal citations and quotation marks omitted) (citing *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 819 (4th Cir. 2007); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003); *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992)). This majority view is designed "to prevent … an unduly harsh result to the creditor or a windfall to the consumer." *In re Sterten*, 352 B.R. 380, 385 (Bankr. E.D. Pa. 2006). "[A] court may abuse its discretion in not conditioning rescission on tender where the TILA violations are not egregious and the equities otherwise favor the creditor…." *WMC Mortgage LLC v. Baker*, No. CIV.A. 10-3118, 2012 WL 628003, at *15 (E.D. Pa. Feb. 28, 2012) (citation omitted).

Third Circuit courts have held repeatedly that a debtor's inability to tender the funds delivered by the lender rendered inappropriate termination of the lender's security interest in effectuating rescission. *See*, *e.g.*, *Jobe*, 373 F. App'x at 262 ("Here, plaintiffs testified that they are unable to repay the loan advanced to them, and they have not made any payments for more than four years. Accordingly, the District Court properly found that… they would not be able to rescind the mortgage obligation because they are

---

repayment is impossible, then rescission, by any definition, has not taken place….

*Iroanyah v. Bank of Am.*, 753 F.3d 686, 692 (7th Cir. 2014) (citations omitted).

- 13 -

unable to return the money defendant advanced to them in reliance on their performance under the contract."); ***Sterten***, 352 B.R. at 387-88 ("I find the concept of permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction to be a balanced, equitable approach."); ***In re Cruz***, 441 B.R. 23, 36 (Bankr. E.D. Pa. 2004) ("[T]he Court's Order will provide that [the lender] shall retain its security interest until the [borrower] completes payment of the 'tender' sum; in other words, the rescission shall be effective only upon completion of the tender."); ***In re Apaydin***, 201 B.R. 716, 724 (Bankr. E.D. Pa. 1996) ("[T]he Court will, at least to some extent, condition the avoidance of [the lender's] security interest on the return of its money by the [borrowers]."); ***Bookhart v. Mid-Penn Consumer Disc. Co.***, 559 F. Supp. 208, 212 (E.D. Pa. 1983) ("The rescission and return of any monies paid to [the lender] is thus conditioned upon [the borrower's] return of the remaining loan proceeds.  In this way, the parties will be most nearly returned to their respective pre-transaction positions.").

Even when trial courts conclude that satisfaction of the borrower's tender obligation need not precede rescission and the resulting termination of the lender's security interest, the courts still have required the borrower to pay the tender in some form as part of its declaration of rescission, unless there was proof of an attempt to cheat the borrower.  ***See***, ***e.g.***, ***In re***

*Gisondi*, 487 B.R. 423, 434 (Bankr. E.D. Pa. 2013) ("[T]his Court finds that the [borrower's] admitted inability to tender the Loan's proceeds is not necessarily fatal to her rescission claim. … If [the court determines that there was a TILA violation warranting rescission], this Court will then consider how the [borrower] may comply with her tender obligation.); *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295 (D. Del. 1990) (terminating security interest but requiring the borrower to pay the tender obligations in monthly installments).

In contrast to the above cases, the trial court in the instant case ordered that (1) "equitable rescission applies to a sum of $45,400," which is the new money provided by Deutsche Bank's predecessor pursuant to the 2005 refinance loan; (2) Deutsche Bank's security interest created by the 2005 loan is rescinded, but it "retains a security interest by mortgage on the property in the amount of $140,000" per the original 2003 loan; (3) Gardner is to repay the $140,000 according to the terms of the 2003 mortgage, with interest beginning to accrue from the date of judgment at the rate set forth in the 2003 mortgage instrument.  Findings of Fact and Conclusions of Law, 4/28/2014, at 3-4 (incorporated by reference in Judgment Order in Equity, 4/28/2014).  The trial court instructed Deutsche Bank to establish a new monthly payment schedule to effectuate the order.  Judgment Order in Equity, 4/28/2014, at 2.

Notably absent from the trial court's order is any provision for Gardner's tender of the new money portion of the rescinded loan. Instead, the trial court provided that Deutsche Bank may file an *in personam* action against Gardner to recover the $45,400. Order, 9/5/2014.

The trial court cites two Third Circuit district court cases from the 1980s as precedent for its decision to absolve Gardner of his duty to tender, at any point, the 2005 loan proceeds as part of the rescission of that loan agreement. **See** Trial Court Opinion, 3/26/2015, at 10 (citing **Gill v. Mid– Penn Consumer Discount Co.**, 671 F.Supp. 1021, 1026 (E.D.Pa. 1987), *aff'd mem.*, 853 F.2d 917 (3d Cir. 1988), and **In re Melvin**, 75 B.R. 952, 960 (Bankr. E.D.Pa. 1987)[6]). "This line of cases may be conceptualized as manifesting the court's exercise of its discretion to modify the statutory rescission procedure in order to impose a further sanction on the creditor due to the equities in the particular case." **Sterten**, 352 B.R. at 385.

However, those cases relieving the borrower of his or her tender obligation, resulting in a forfeiture by the lender, are limited to "situations where creditors have tried to deceive or cheat the consumer." **In re Williams**, 291 B.R. 636, 655 (Bankr. E.D. Pa. 2003) (quoting **Michel v. Beneficial Consumer Discount Co.**, 140 B.R. 92, 101 (Bankr. E.D. Pa.

---

[6] In reaching its conclusion, the **Melvin** court relied heavily upon **Tucker v. Mid–Penn Consumer Discount Co.**, 74 B.R. 923 (E.D.Pa. 1987), which is mentioned *infra*.

1992)) (declining to hold that the borrower "should be relieved of her 'tender obligation'" under TILA even though it adopted the minority view that termination of the lender's security interest could not be conditioned upon tender). As one district court in the Third Circuit explained:

> There is some precedent for the proposition that because [TILA] requires the obligor to tender the proceeds only after the creditor appropriately reacts to the rescission by returning the property given and satisfying any security taken within twenty days, the recalcitrance of a creditor to accept a valid rescission obviates the obligor's requirement to tender and leaves the obligor with both a right to recover any payments made and a vesting of the proceeds of the transaction in himself without an obligation to repay it. **See Gill** [and] **Tucker**[, **supra**]. However, in the majority of prior cases the courts have either explicitly held that an obligor must tender or offer to tender the proceeds of the consumer transaction before finding a forfeiture; or the particular circumstances of the case indicated that the consumer had tendered the proceeds in those cases where a forfeiture was found. Although mindful that the statutory language contemplates a tender by the debtor after the creditor has performed his duties, several courts that have expressly addressed whether or not a tender by the consumer is required before finding a forfeiture of the proceeds of a transaction by the creditor, have found tender to be required to insure compliance with the congressional purpose of restoring the parties to the *status quo*.

**Mayfield v. Vanguard Sav. & Loan Ass'n**, 710 F. Supp. 143, 147 (E.D. Pa. 1989) (some citations omitted).

Indeed, in **Mayfield**, a case with a similar factual basis as the instant case, the court held as follows:

> In this case, [the borrower] does not allege, nor is there evidence of record that establishes, that [the borrower] tendered the loan proceeds. Moreover, while I find from the

uncontradicted evidence of record that [the lender's] conduct was questionable in that it was extremely careless in complying with the TILA statutory requirements and charged plaintiff, who was in a desperate credit situation, excessive settlement charges and an unconscionable interest rate [(20%)] far above the prevailing market rate thereby placing her home in jeopardy, there is no real evidence of record that defendant tried to deceive or cheat [the borrower]. … In the absence of evidence of fraud or deceit by [the lender] and of a tender of the proceeds by [the borrower], I conclude that [the borrower] has a continuing duty to return the proceeds of the loans.

*Id.* at 147-48.  The court went on to allow the borrower to repay her tender obligation in monthly installments.  *Id.* at 149.

Here, Gardner proved that Deutsche Bank's predecessor violated TILA by providing the wrong model form.  The record also shows that the trial court was troubled by the fact that Gardner was paying "interest at 11 percent in an era of 4 percent interest…."  N.T., 4/14/2014, at 90-91.  **See also id.** at 92 ("I have questions about the whole rescission aspect of this.  Because that loan rescission, there is something to it, in an era of cheap interest, that he wanted to withdraw the loan at 11 percent and somehow was unable to do so.").  However, Gardner offered no admissible evidence that Deutsche Bank or any of its predecessors was guilty of fraud or deceit.[7]

We hold that, with this absence of any proof of an intent by Deutsche Bank or any of its predecessors to deceive or cheat Gardner, the trial court

---

[7] Gardner offered multiple documents printed from the Internet as evidence in an effort to prove wrongdoing by Ameriquest and some individuals whose relationship with Deutsche Bank is unclear, but the trial court excluded them as hearsay.  **See**, **e.g.**, N.T., 4/14/2014, at 159-60.

abused its discretion in ruling that rescission was appropriate, and in ordering the termination of Deutsche Bank's security interest obtained in the 2005 refinance transaction, without also requiring Gardner to fulfill his tender obligation.

Accordingly, we vacate the September 23, 2014 judgment and the April 28, 2014 judgment order in equity and remand the case for further proceedings consistent with this opinion. Specifically, the trial court upon remand must calculate the amount of Gardner's tender obligation and order Gardner to satisfy that tender obligation either by paying that amount to Deutsche Bank in a lump sum or by satisfying it over time. Upon full consideration of the case law discussed above, the trial court also must determine whether termination of Deutsche Bank's 2005 security interest prior to Gardner's full tender is equitable under the circumstances of this case.

Judgment vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Panella did not participate in the consideration or decision in this case.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/14/2015