J-A04007-24

2024 PA Super 241

| | | |
|---|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE OF NRZ INVENTORY TRUST | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL S. GARDNER | : | No. 458 EDA 2023 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered February 15, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 080103467


BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY STABILE, J.:                          **FILED OCTOBER 18, 2024**

Michael S. Gardner appeals from the February 15, 2023, order entered following our remand for further proceedings in this mortgage foreclosure action. Gardner claims that the order does not comply with this Court's remand directive. Upon review, we affirm.

We previously set forth the facts as summarized by the trial court:

Gardner lives in a residence he owns at 9887 Verree Road, Philadelphia, PA. In June 2003, he signed a mortgage on his home and borrowed $140,000 from Ameriquest. In January 2005, Gardner and Ameriquest refinanced in the amount of $185,400, adding $45,400 to the loan. A second mortgage was signed. At closing Ameriquest gave Gardner a federal H-8 Form to advise Gardner of his recission rights.

At the early stages of the economic downturn in October 2007 and facing economic pressure, Gardner applied to rescind the refinance agreement and stopped repaying the loan. He learned

_____

[*] Retired Senior Judge assigned to the Superior Court.

he had not been given [the] correct disclosure of his recission rights, and this had taken place at a time when Ameriquest's mortgage practices were coming under national scrutiny. Hundreds of actions had been filed against Ameriquest under the [Truth in Lending Act (TILA)], and Gardner added his own complaint in the U.S. Court for the Eastern District of Pennsylvania. Gardner's action to enforce his recission rights for the refinance loan was transferred and consolidated with an ongoing TILA class action against Ameriquest in the U.S. Court for the Northern District of Illinois. When this class action settled, Gardner waived his direct TILA claims against Ameriquest and kept the right to defend himself against mortgage foreclosure. Gardner also preserved his right to assert an affirmative defense based on inadequate notice.

* * * *

On January 12, 2008, Deutsche Bank, trustee for Ameriquest, filed this mortgage foreclosure action against [] Gardner. This case was in limbo for five years until the federal class action settled.

A bench trial took place on April 14, 2014. Gardner represented himself *pro se*. Findings of fact and conclusions of law were entered on April 28, 2014. Among the points: 1) Deutsche Bank had standing as an Ameriquest trustee to bring this mortgage foreclosure action . . .; 2) Ameriquest did not comply with the TILA requirements, and therefore, Gardner's affirmative defense was valid and prevented foreclosure; 3) Gardner was entitled to rescind his refinance loan, but only up to the $45,400 which was added during the refinance, and so was not permitted to rescind the original $140,000 loan; and 4) Gardner's home remains mortgaged to Deutsche Bank under terms of the first mortgage in the amount of $140,000.

*Deutsche Bank Nat. Trust Co. v. Gardner*, 125 A.3d 1221, 1223-24 (Pa. Super. 2015). Deutsche Bank appealed and this Court found that the trial court abused its discretion when it ruled that recission was appropriate and ordered termination of Deutsche Bank's security interest without requiring

- 2 -

Gardner to fulfill his tender obligation. *Id.* at 1231. We vacated the order

and remanded with specific instructions:

> Specifically, the trial court upon remand must calculate the amount of Gardner's tender obligation and order Gardner to satisfy the tender obligation either by paying that amount to Deutsche Bank in a lump sum or by satisfying it over time. Upon full consideration of the case law discussed above, the trial court must also determine whether termination of Deutsche Bank's 2005 security interest prior to Gardner's full tender is equitable under the circumstances.

*Id.*

Upon remand, the trial court conducted additional evidentiary hearings.

Trial Court Opinion, 7/19/23, at 3. On January 17, 2018, the trial court issued

the following order:

> [T]his court concludes that, upon entry of judgment, Gardner shall owe Deutsche Bank a sum of $45,400 with legal interest calculated from the date this mortgage foreclosure action was filed on January 12, 2008. This payment by Gardner is based on his duty to pay the tender obligation he agreed to when he refinanced his first mortgage. Payment of this tender obligation is pursuant to order by the Superior Court and shall be adjudged following a hearing.
>
> As the Superior Court also held that Gardner's right to rescind the January 2005 refinance mortgage extended to three years, and because [the trial] court has found that [Gardner] requested recission in a timely fashion, Gardner has the right to rescind. However, because the Superior Court has not ordered this court to determine on remand if termination of Deutsche Bank's January 2005 security interest is equitable, **this court now concludes that equity requires denial of recission with modifications to the terms of the refinanced mortgage.**
>
> Therefore, upon entry of judgment, Deutsche Bank shall extend the duration of its January 21, 2005 refinance loan of $185,400. The new term shall reflect the time [Gardner] has not paid

> Deutsche Bank on the refinance loan pending resolution of this litigation.
>
> Accordingly, [the trial] court orders both parties to attend a hearing on Monday, February 26, 2018 at 9:30 AM in Courtroom 425, City Hall for evidence to determine the exact amount Gardner shall be adjudged to pay Deutsche Bank over [the] years. This sum will only include principal and legal interest with no other charges. All sums paid to date by Gardner to Deutsche Bank from the date of the inception of the first mortgage in June 2003 will be credited to Gardner.
>
> Based on the sum that Gardner shall be adjudged to pay Deutsche Bank, and the duration of the refinance loan's extension, [the trial] court will approve a monthly amortization schedule and incorporate same in judgment.
>
> At all times until Gardner fully repays Deutsche Bank, the existing mortgage lien held by Deutsche Bank and or its successors and assignees shall stand on the real property at 9887 Verree Road in Philadelphia.

Order, 1/17/18 (emphasis added). Neither party appealed this order. "Thereafter, [] Gardner flagrantly rebuffed all efforts to resolve the matter and continued upon his lengthy course of paying absolutely nothing to the Deutsche Bank and its assignees in contemptuous violation of the trial court's January 17, 2018 Order." Trial Court Opinion, 7/19/23, at 4.

On June 17, 2020, the trial court granted Deutsche Bank's motion to substitute U.S. Bank National Association as plaintiff in the mortgage foreclosure action. Gardner appealed and this Court quashed the appeal.

On May 25, 2022, the trial court granted U.S. Bank National Association's motion to substitute MTGLQ Investors, LP as plaintiff in the mortgage foreclosure action. Again, Gardner appealed, and this Court

quashed the appeal. Thereafter, Appellee[1] filed a motion for entry of judgment against Gardner and a motion for assessment of damages. Hearings were held on October 17, 2022 and January 24, 2023. On February 15, 2023, the trial court entered an order granting Appellee's motions for entry of judgment and assessment of damages:

> **IT IS FURTHER ORDERED AND DECREED** that to secure payment of Gardner's re-tendered obligation in a just and equitable fashion for both [Appellee] and Gardner consistently with the previously entered and existing orders of court, the terms of the mortgage between [Appellee] and Gardner, as filed with the Philadelphia Department of Records at Instrument No. 51113452 on the subject Property located at 9887 Verree Road, Philadelphia 19115 (hereinafter referenced as "Property"), shall be enforced and modified as set forth below:
>
> Beginning on March 1, 2023, Gardner shall make monthly payments of principal, interest and escrow for hazard insurance, county real estate and school district taxes owed on the subject Property to [Appellee], or its identified service agent at the address so designated for payment, as follows:
>
> a. The amount of Gardner's monthly payment of principal and interest shall be **$1,056.14** and shall be calculated according to the amortization schedule attached hereto as **Exhibit F-2**, which is incorporated by reference herein as if set forth in full. Such monthly payments will be due until December 31, 20[53], when the remaining unpaid principal balance, as well as any additional interest, charges, advances and other uncollected fees and costs accruing after November 30, 2022 must be paid in full.
>
> b. Given the incredible testimony tendered during the respective hearings held before [the trial court] by Gardner concerning his financial worth and capabilities regarding

---

[1] On January 26, 2024, this Court granted MTGLQ Investors motion to substitute US Bank National Association, solely as trustee of NRZ Inventory Trust, as Appellee in this matter.

future and past payments and his demonstrated long-standing defiance of his ongoing obligations to pay for annual real estate and school district taxes and for hazard insurance for the subject Property, Gardner shall pay for real estate and school district taxes and for hazard insurance owed on the Property effective November 30, 2022 in the form of escrow payments as set forth in the below paragraph (c).

c. The amount of Gardner's monthly escrow payment for hazard insurance, county real estate and school district taxes owed begin with the amount of hazard insurance, real estate and school district taxes owed on the Property for the calendar year of 2022 as allocated within the attached Amortization Schedule attached and incorporated hereto as **Exhibit F-2** as if set forth in full. The amount of the escrow portion of Gardner's monthly payment may change depending upon the amount of hazard insurance, real estate and school district taxes owed on the Property annually and shall be in an amount permitted under the Real Estate Settlement Procedures Act and its implementing regulations.

d. Although [Appellee] and its predecessors had sufficiently demonstrated payment of $63,140.37 in hazard insurance, real estate, and school district taxes on the subject Property to date, and although this exclusion of this reimbursement within Gardner's future obligations gives undue economic benefit to Gardner, the Order in Equity that had been entered . . . on January 17, 2018, appears to exclude reimbursement of these payments, and as such, shall not be included within this Order and the corresponding computations.

e. Per the Order in Equity that had been entered [on January 17, 2018], directing inclusion of credit for Gardener's "prior payments of [$48,212.31] with legal interest calculated from the date that this mortgage foreclosure action had been filed on January 12, 2008," this amount shall be included as credits in accordance with the attached and fully incorporated amortization schedule identified as **Exhibit F-2**.

**IT IS FURTHER ORDERED AND DECREED** that except as otherwise modified in the instant Order, the fully incorporated and referenced Mortgage remains in full force and effect.

**IT IS FURTHER ORDERED AND DECREED** that should Gardner default on the terms and conditions as set forth in the instant Order or otherwise commit an act of default under the Mortgage after the date and of entry of this Judgment Order, [Appellee], or its designated successor, may exercise all rights permitted to it under the Mortgage including, but not limited to, acceleration of the obligation owed and foreclosure of the subject Property.

Order, 2/15/23 (cleaned up) (emphases in the original).  This appeal followed.

Gardner raises six issues for our review:

1. Whether the trial court . . . committed an error in law by not understanding the Superior Court Opinion 2015 [Pa. Super.] 219, on October 14, 2015?

2. Whether the trial court . . . committed an error in law in accepting an inequitable assessment of damages that fails to comply with the Truth in Lending Act violation by original lender Ameriquest Mortgage in 2005?  An inequitable assessment of damages that fails to comply with the Superior Court Opinion 2015 [Pa. Super.] 219, on October 14, 2015, and Federal Reserve guidelines for TILA violations?

3. Whether the trial court . . . committed an error in law in quickly rejecting [Gardner's] counter-offer at the January 24, 2023 trial?  This was [Gardner's] third counter-offer since 2017.

4. Whether the trial court . . . committed an error in law in not recognizing that the witness for [Appellee] was not credible, gave incomplete testimony and basically a robo-witness?

5. Whether the trial court . . . committed an error in law in not allowing [Gardner] any sort of discovery from the third successor [Appellee] in this case and granting a protective order that [Appellee] motioned for after the trial was already over?

6. Whether the trial court . . . committed an error in law in granting MTGLQ Investors, L.P. to be successor for U.S. Bank N.A., in

spite of evidence submitted by [Gardner] that U.S. Bank N.A. had already sold the mortgage note to Citibank N.A. in August 2020?

Appellant's Brief at 9-10.

While we acknowledge that Gardner has not complied with several rules of appellate procedure,[2] we decline Appellee's request to quash the appeal. "[W]e need only quash an appeal based upon a defective appellate brief if such defects impair our ability to conduct appellate review." **AmeriChoice Federal Credit Union v. Ross**, 135 A.3d 1018, 1022 (Pa. Super. 2015) (quotations marks and citation omitted). Although inartful, rambling and incoherent at times, the sole issue we can discern from Appellant's brief, and therefore decide, is whether the February 15, 2023, order complies with this Court's directive on remand.[3]

Following remand, "the trial court must comply strictly with this Court's mandate and has no power to modify, alter, amend, set aside, or in any

_____

[2] Gardner failed to file a reproduced record as required by Pa.R.A.P. 2101; failed to include a statement of how the issues raised on appeal were preserved as required by Pa.R.A.P. 2111 and 2117(c); and failed to divide his argument section into as many parts as there are questions and to provide citations to authority or references to the record as required by Pa.R.A.P. 2119.

[3] While we decline to quash this appeal, we find that Appellant's remaining issues are waived due to his failure to comply with the Rules of Appellate Procedure. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived" (citation omitted)); **see also McCabe v. Marywood University**, 166 A.3d 1257, 1264 (Pa. Super. 2017) (issue waived due to violation of Pa.R.A.P. 2119(a) as the appellate brief "consist[ed] of one paragraph with no citation to authority or developed analysis").

measure disturb or depart from this Court's decision as to any matter decided on appeal." ***Commonwealth v. Null***, 186 A.3d 424, 429 (Pa. Super. 2018) (citation omitted). As explained in our 2015 opinion:

> When a party seeks the equitable "remedy of recission, part and parcel of the award of that remedy is returning the parties, to the extent possible, to the status *quo ante*." ***In re Fowler***, 425 B.R. 157, 204 n. 65 (Bankr.E.D.Pa.2010) (citing ***Baker v. Cambridge Chase, Inc.***, 725 A.2d 757, 766 (Pa. Super. 1999) ("It is well known that the purpose of equitable recission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction.")). "[R]ecission traditionally required either that the rescinding party return what he received before a recission could be effected (recission at law), or else that a court affirmatively decree recission (recission in equity)." ***Jesinoski v. Countrywide Home Loans, Inc.***, --- U.S. ----, 135 S.Ct. 790, 793, 190 L.Ed.2d 650 (2015).
>
> However, TILA "alters the traditional process for unwinding such a unilaterally rescinded transaction[.]" ***Id.*** Regulation Z provides the following recission procedure:
>
> > **(d) Effects of recission.**
> >
> > (1)    When a consumer rescinds a transaction, the security interest giving rise to the right of recission becomes void and the consumer shall not be liable for any amount, including any finance charge.
> >
> > (2)    Within 20 calendar days after receipt of a notice of recission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
> >
> > (3)    If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that

paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

> (4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23(d).

Thus, the default procedure once notice of recission has been honored by the lender or validated by a court, is for the lender to take steps necessary to reflect termination of the security interest and to return any property or money given by the borrower before the borrower's duty to tender loan proceeds back to the lender is triggered. Subsection (d)(4) empowers the court to alter or reorder the procedure of the recission.

"Pursuant to [TILA], courts have the discretion to condition recission on tender by the borrower of the property he has received from the lender. [C]ourts have denied recission where the borrowers were unable to tender payment of the loan amount." **Jobe v. Argent Mortgage Co., LLC**, 373 Fed.Appx. 260, 262 (3d Cir. 2010) (internal citations and quotation marks omitted) . . .. This majority view is designed "to prevent . . .an unduly harsh result to the creditor or a windfall to the consumer." **In re Sterten**, 352 B.R. 380, 385 (Bankr.E.D.Pa. 2006). "[A] court may abuse its discretion in not conditioning recission on tender where the TILA violations are not egregious and the equities otherwise favor the creditor. . .." **WMC Mortgage LLC v. Baker**, No. CIV.A. 10-3118, 2012 WL 628003, at *15 (E.D.Pa. Feb. 28, 2012) (citation omitted).

Third Circuit courts have held repeatedly that a debtor's inability to tender the funds delivered by the lender rendered inappropriate termination of the lender's security interest in effectuating recission. **See, e.g., Jobe**, 373 Fed.Appx. at 262 ("Here, plaintiffs

testified that they are unable to repay the loan advanced to them, and they have not made any payments for more than four years. Accordingly, the District Court properly found that . . . they would not be able to rescind the mortgage obligation because they are unable to return the money defendant advanced to them in reliance on their performance under the contract."); ***Sterten***, 352 B.R. at 387-88 ("I find the concept of permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction to be a balanced, equitable approach."); ***In re Cruz***, 441 B.R. 23, 36 (Bankr.E.D.Pa. 2004) ("[T]he Court's Order will provide that [the lender] shall retain its security interest until the [borrower] completes payment of the 'tender' sum; in other words, the recission shall be effective only upon completion of the tender."); ***In re Apaydin***, 201 B.R. 716, 724 (Bankr.E.D.Pa. 1996) ("[T]he Court will, at least to some extent, condition the avoidance of [the lender's] security interest on the return of its money by the [borrowers]."); ***Bookhart v. Mid-Penn Consumer Disc. Co.***, 559 F.Supp. 208, 212 (E.D.Pa. 1983) ("The recission and return of any monies paid to [the lender] is thus conditioned upon [the borrower's] return of the remaining loan proceeds. In this way, the parties will be most nearly returned to their respective pre-transaction positions.")

***Deutsche Bank Nat. Trust Co.***, 125 A.3d at 1227-29.

On remand, we directed the trial court to (1) calculate Gardner's tender obligation; (2) order Gardner to pay the tender obligation either in a lump sum or over time; and (3) determine whether termination of Appellee's security interest prior to Gardner's full tender was equitable.

Here, the trial court determined Gardner's tender obligation was $45,400. The trial court further determined that Gardner was unable to pay the tender obligation and has not made any payments since 2007. Thus, the trial court properly found that "equity requires denial of recission" because Gardener was unable to pay the tender obligation ($45,400) to Appellee. Moreover, the trial court directed that only the principal and interest be

- 11 -

included in the amortization schedule, and that Gardner be credited for all prior payments. This unappealed Order was entered on January 17, 2018.

After several years of delay, the trial court held two hearings to determine an appropriate amortization schedule consistent with the January 17, 2018, order. As a result, the trial court entered an order modifying the terms of the mortgage as an equitable remedy to return the parties, to the extent possible, to the status *quo ante*.

The modified 30-year mortgage begins in March 2023 and ends in February 2053. The amortization schedule credits Gardner for all payments he made as made on the mortgage until 2007 and reduces the interest from 11% to 6%. Thus, Gardner received the benefit of no payments or interest accrual between 2007 and March 2023, and a reduced interest rate. Appellee however retains its security interest, since Gardner is unable to presently repay the tender amount. We find that the trial court's February 15, 2023, order strictly complies with our directive on remand and provides an equitable remedy for a TILA violation. ***See Null, supra.*** Therefore, we find no abuse of discretion or error of law.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2024