J-S10035-26

2026 PA Super 90

| | | |
|---|---|---|
| SHIRLEY MORTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK E. GREEN, JR., AND RONI L. | : | No. 1184 MDA 2025 |
| JONES, AND FRANK E. GREEN, SR., | : | |
| AND GINA L. GREEN | : | |

Appeal from the Order Entered July 29, 2025
In the Court of Common Pleas of Clinton County
Civil Division at No: 2021-01500

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED: APRIL 30, 2026**

In this adverse possession case, Shirley Morton (Appellant) appeals from the order denying her motion to rescind the stipulation and agreement (Agreement) she entered into with her neighboring property owners and relatives, Frank E. Green, Jr., Roni L. Jones, Frank E. Green, Sr. and Gina L. Green (collectively, Appellees).[1]  After careful consideration, we are constrained to reverse.

*CASE HISTORY*

Appellant initiated the underlying action by filing a complaint for quiet title and ejectment on December 28, 2021, followed by an amended complaint on February 28, 2022.

---

[1] Frank E. Green, Sr. is Appellant's brother.  He is married to Gina L. Green, and the couple are the parents of Frank E. Green, Jr., and Roni L. Jones.

It is undisputed that Appellant owns approximately one acre, known as Clinton County Tax Parcel 09-01-0051-B (North Parcel), which is bordered on the south by Appellees' property, which is approximately four acres, and known as Clinton County Tax Parcel 09-01-0049-001 (South Parcel). ***See*** Complaint, 12/28/21, at ¶¶ 3-4 (attaching copies of the deeds to the North Parcel and South Parcel as Exhibits A and B, respectively); Amended Complaint, 2/28/22, at ¶¶ 3-4 (same).[2]  Appellant has alleged that in 2021, Appellees "commenced a course of action which appears to challenge [her] right to" an area of land (Disputed Parcel) that lies along the south of her North Parcel.  Amended Complaint at ¶ 7.  Appellant averred that Appellees' actions "include[ed] the destruction of fences both along the Disputed Parcel, and along [her] real property." ***Id.***

Also in 2021, Appellant hired Daniel A. Vassallo, of Vassallo Engineering & Surveying, Inc., "to perform surveying work on and around" her North Parcel.  Trial Court Opinion (TCO I), 7/29/25, at 5.  On December 6, 2021, Mr. Vassallo prepared a one-page survey (Original Survey) for Appellant.  The

---

[2] Appellant owns the North Parcel with her daughter, Robin L. Emerick.  As the sole owner, Appellant transferred title of the North Parcel, by deed dated November 1, 2012, and recorded on February 14, 2023, to herself and Robin L. Emerick as joint tenants with right of survivorship.  The complaint and amended complaint both named Robin Emerick as a plaintiff with Appellant. However, on August 4, 2023, Appellees filed a motion for summary judgment, stating that "Robin L. Emerick has not owned the [North Parcel] for 21 years, and … summary judgment is appropriate in favor of [Appellees] and against plaintiff Robin L. Emerick."  Motion for Summary Judgment, 8/4/23, at ¶ 6. On September 19, 2023, the trial court granted summary judgment as to Robin L. Emerick.  ***Id.***

Original Survey contains measurements which reference "Richard H. Ohl Survey 06/12/1972," "Richard H. Ohl Survey 11/18/1974," and "Richard H. Ohl Survey 08/04/1988," and describes the Disputed Parcel between the parties' land as "containing 17,642 [square feet] or 0.4050 acres." Original Survey, 12/6/21. Based on the Original Survey, Mr. Vassallo advised Appellant that she did not own the Disputed Parcel. **See** N.T., 6/2/25, at 41. Consequently, Appellant filed the complaint and amended complaint claiming adverse possession of the Disputed Parcel. **See** Complaint at ¶ 5 (attaching Original Survey as Exhibit C); Amended Complaint at ¶ 5 (same). Appellant averred that her "open, exclusive, continuous and adverse possession of the Disputed Parcel has included construction of fences to the south of the Disputed Parcel. Further, the southern boundary of the Disputed Parcel has been marked by trees." Amended Complaint at ¶ 6.

Appellees denied Appellant's adverse possession claim. **See generally**, Answer with New Matter to Amended Complaint, 3/21/22, at ¶¶ 1-30.[3] They averred that "any such use" of the Disputed Parcel by Appellant "was with [Appellees'] permission," and was neither continuous or exclusive, as Appellees "used the same area." **Id.** at ¶ 5.

A trial was scheduled to begin on June 13, 2024. On the morning of trial, counsel advised the court that the parties had "reached a resolution." N.T., 6/13/24, at 2. The court then relayed the "plan, as I understand it, [to]

---

[3] Appellees did not raise any counterclaims.

- 3 -

have counsel outline the agreement on the record." ***Id.*** The court stated it would "direct the preparation of the official transcript, and then attach that to an Interim Order until a final survey has been completed." ***Id.*** The court then issued the following order:

> AND NOW, this 13th day of June, 2024, following [a] scheduled bench trial [for] this date where [the parties] appeared with [counsel], and pursuant to stipulation and agreement, IT IS HEREBY ORDERED and DIRECTED as follows:
>
> 1. This matter is resolved in accordance with the parties' agreement as more particularly set forth in the official transcript of today's proceedings attached hereto and marked as Exhibit A, as well as the attached [Original S]urvey marked as [Appellees'] Exhibit No. 1.
>
> 2. [Appellant's] counsel will be responsible for securing the final survey [(Final Survey)] and [Appellees'] counsel will be responsible for preparing the final easement agreement[,] following which counsel for [both parties] shall submit to the [c]ourt a proposed Final Order incorporating the survey and easement agreement.
>
> 3. The nonjury trial scheduled for Ju[ne] 13 and 14, 2024, and July 19, 2024, is cancelled.

Interim Order, 6/13/24, at 1-2.

In the attached transcript, Appellees' counsel stated:

> The parties have reached an agreement[, and] the terms of the agreement are that my clients, [Appellees], will grant [Appellant] a nonexclusive easement in a portion of the [D]isputed [Parcel]. We've drawn on [the Original Survey,] which we've marked as Defendants' Exhibit 1. It's not drawn to scale. But the area of the easement would be on Summerson Mountain Road from the pin separating the parties' properties[,] going two feet south and then from that point angling to what is marked on the [Original S]urvey as point, [*sic*] which is in line with the big pole, and continuing 90 degrees down. So that small triangle would be the nonexclusive easement area.

The parties further agree that the portion of that nonexclusive easement between the garage and the eastern edge of that easement would not be – neither party would interfere with the use by the other party. So no parking any vehicles or installing anything there. In the entire easement there would be no permanent structures built. There could be [a] temporary picnic table, trampoline, that sort of thing, [but] not [anything with] a foundation.

[Appellant] will be responsible for the cost of the preparation of the [Final S]urvey to be done I believe by Mr. Vassallo, their surveyor, and will be responsible for the cost of the preparation of the easement. We would ask the [c]ourt to enter a [t]emporary [o]rder until we have the easement, the [Final S]urvey completed and then adopt that surveyed easement area in a Final Order.

N.T., 6/13/24, at 3-4. The parties expressed their agreement with counsel's statement. *Id.* at 5-8. However, the settlement did not proceed as planned.

On October 15, 2024, Appellees filed a motion to schedule a status conference, noting the parties had "reached a settlement," "agreed to an easement[,] and [Appellant] was required to have the [Final S]urvey prepared describing the location of the easement." Motion to Schedule a Status Conference, 10/15/24, at ¶¶ 1-2. Appellees requested a status conference because Appellant had "not obtained the [Final S]urvey of the easement as directed by the [trial c]ourt." *Id.* at ¶ 4.

On November 15, 2024, the trial court held a "counsel-only conference," and "being assured that Vassallo Survey will have the [F]inal [S]urvey completed no later than" December 31, 2024, scheduled a second status conference for March 5, 2025. Order, 11/15/24, at 1.

Prior to the status conference, on February 28, 2025, Appellant filed a motion to rescind Agreement "based on mutual mistake or, in the alternative,

impracticability or impossibility of performance." TCO I at 8. Appellant averred that in the process of obtaining the Final Survey, Mr. Vassallo "has now determined that the [Original S]urvey used to establish the easement area was inaccurate." Motion to Rescind the Stipulation and Agreement, 2/28/25, at ¶ 8. Appellant attached and incorporated a 2-page report (Report) from Vassallo Engineering & Surveying, Inc., dated January 4, 2025, as Exhibit A. The first page of the Report is a written narrative titled "Boundary Analysis," and the second page is a different survey of the same land represented in the Original Survey. The survey in the Report does not reference prior surveys by Richard H. Ohl, and notes "10.5 SHORT" by the Disputed Parcel. *Id.* Based on the Report, Appellant averred:

> [Mr. Vassallo] has determined that the boundary line between the properties is actually approximately ten and one-half (10.5) feet off, resulting in [Appellant's] property line shifting ten and one-half (10.5) feet off to the South of its current location as depicted in the [Original S]urvey attached to the Interim Order of Court dated June 13, 2024.
>
> The parties relied on the boundary line identified in the [Original S]urvey attached to the Interim Order of Court dated June 13, 2024 to enter into the [A]greement.
>
> The information identified by [Mr. Vassallo] in his [Report] was completely unknown to either party at the time that the settlement was agreed upon.
>
> It was clearly a mistake that was unknown by both parties.
>
> It would be an injustice to the parties to allow the [A]greement to move forward with this new information.
>
> The parties would not be prejudiced by th[e trial court] rescinding the [A]greement, the terms of which were placed on the record and included in the Interim Order….

*Id.* at ¶¶ 9-14.

Appellees opposed Appellant's motion. They argued that the parties had "agreed to the boundary line," and "[t]here was no need for a new survey or other points to be determined, other than a point two feet from an existing pin." Response to Motion to Rescind the Stipulation and Agreement, 3/3/25, at ¶ 1-2. Appellees claimed Appellant "failed to perform the simple act of having the line drawn showing the edge of the easement." *Id.* at ¶ 3. Appellees also disagreed that "there was a mistake known by both parties," and stated, "[r]egardless of any belief, [Appellant] is judicially estopped from asserting something different than what she asserted in her complaint and settlement agreement." *Id.* at ¶ 12.

The trial court scheduled the matter "for a one (1) hour evidentiary hearing." Order, 3/5/25, at 1. The hearing was held on June 2, 2025. Appellant presented testimony from Mr. Vassallo, and testified briefly at the conclusion of Mr. Vassallo's testimony.[4] Appellees did not testify or present any witnesses.

*Mr. Vassallo's Testimony*

Mr. Vassallo testified to being a licensed professional land surveyor and engineer. N.T., 6/2/25, at 4. He confirmed he prepared the Original Survey for Appellant because of "some sort of dispute relative to the ownership of a

---

[4] When counsel called Appellant to testify, the trial court "remind[ed] counsel … that testimony must be concluded within the time allotted, which is one hour." N.T., 6/2/25, at 36. Counsel replied, "We got 10 minutes, Your Honor," and the trial court confirmed, "You do." *Id.*

piece of ground." *Id.* at 6. Mr. Vassallo stated that in 2021, he and his "survey crew entered upon the grounds, and located all the monuments we could find, the corner pins," and "located the claim of the area of possession." *Id.* When he prepared the Original Survey in 2021, Mr. Vassallo believed "everything was accurate and correct." *Id.*

Appellant's counsel asked Mr. Vassallo:

Q. At some point in time were you asked to come back and review this survey for [Appellant]?

A. Yes, I was.

Q. And as part of a[n A]greement, you became aware that you were supposed to identify an easement area for the parties to be able to work with?

A. Yes.

Q. Did you do some additional survey work to be able to actually map that out?

A. We had gone up to the site to look for some more monuments, exterior of the site.

Q. At some point in time, did you come to the realization that there was a discrepancy in some of the monuments and being able to determine where the southern boundary of [Appellant's] property was?

A. Yes.

Q. And eventually did you detail that in a report for the [c]ourt?

A. Yes.

*Id.* at 7.

Mr. Vassallo testified that in 2024, he returned to the property "to identify where the actual pin was that [he] needed to mark the easement,"

and determined, "[a]ccording to the original deed," that "it was about 10½ feet further to the south than it should have been." *Id.* at 9.[5]  Mr. Vassallo agreed the pin's location "created an issue relative to creating a survey with the easement area that was identified in [the parties' Agreement]." *Id.* During this testimony, the trial court observed, "there's no evidence before this [c]ourt that the pin was moved." *Id.* at 10.

Appellant's counsel continued to question Mr. Vassallo:

Q.    So let me ask you this question.  The pin is not in the location where it should have been based on the deed you reviewed; is that accurate?

A.    That's correct.

Q.    The pin as it existed at least was the same pin – to the best of your knowledge, was that the same pin when you came out and surveyed the property the first time?

A.    Yes.

Q.    And it is your assumption that the pin was set improperly the first time?

A.    That's what – yes.  The way the deed from [the North] Parcel was laid out was from the south from some other pins and not from the north, which is what the property came from to determine where that was at [*sic*].

Q.    And would it be your conclusion that the additional 10 feet would technically belong to [Appellant] based on your work?

---

[5] Throughout his testimony, Mr. Vassallo referenced the deed to Appellant's North Parcel, which states that the North Parcel "is described in accord with the survey of the same by H. Richard Ohl, Registered Surveyor, dated the 4th day of August, 1988, a copy of which is attached hereto and made a part hereof."  Complaint at Exhibit A; Amended Complaint (same).

A.     Based on mathematics and the dimensions of the original surveys, yes.

Q.     Was this all information that became new to you after you prepared this survey?

A.     After I was asked to verify the validity of the pin, the existing iron pipe, I should say, we went in and did a lot more surveying to substantiate whether that pipe was in the correct position.

Q.     And that was all new information to you from when you went in and did your [O]riginal [S]urvey?

A.     That's correct.

*Id.* at 10-11.  Mr. Vassallo reiterated that 10½ feet of property he previously attributed to Appellees' South Parcel "is within [Appellant's] deed." *Id.* at 35.

On cross-examination, Mr. Vassallo testified that he did not speak with Appellant after the Agreement was entered on June 13, 2024. *Id.* at 14.  He explained that his communications after June 13, 2024, "pretty much have all been" with Appellant's son-in-law, Tim Emerick. *Id.* at 16.  Mr. Vassallo recounted Mr. Emerick contacting him on June 17, 2024, and informing him about the Agreement, including Appellant's "responsib[ility] for getting an outline of this easement based on the [A]greement." *Id.* at 17.  Mr. Emerick also asked Mr. Vassallo "to define the validity of that pin, exacto [*sic*] pipe." *Id.* at 12.  Mr. Vassallo testified that had he not been asked about the validity of the pin, he could have "describe[d] the easement" based on the Original Survey. *Id.*  He stated, "it was the same pipe when we got there the first time in '21, it's the same location that it was when we went back there in '24." *Id.* at 33.  He further explained:

- 10 -

The parcel, the [deed to the North P]arcel, which is wrong, references 273 feet from existing corner to the property to the south. It should have been 237 feet. It was transposed. You can see the drawing -- the survey of the property that's south, Mr. [O]hl's survey[,[6]] says 237 feet. Our reference to our property says 273. There was an error; it was transposed. So I came off this pip [*sic*] and there it's relatively correct where it should have been according to the survey done to the south. So how our property, the [North Parcel] was done was based off the survey by Mr. [O]hl that came up 237 feet, and that pipe is where that is saying that it was the southwest corner of the [North] Parcel No. 2, the big parcel, the darker gray, but that parcel -- I don't know how Mr. [O]hl got that -- put that pipe in there. It doesn't say existing iron pipe. But it was supposed to be[,] I just went to 1485 feet from the northeast corner of the Maxwell estate. That determined where the original [North P]arcel would be.

*Id.* at 13.

Mr. Vassallo observed that "the descriptions in the deeds for these properties in that area were not great." *Id.* at 18. He also repeated that he could have "stak[ed an easement] the way it was" contemplated by the parties' Agreement. *Id.* at 30.

*Appellant's Testimony*

Appellant testified that she entered into the Agreement based on the Original Survey. *Id.* at 37. She stated, "the first survey [Mr. Vassallo] did[, he] told me that [the Disputed Parcel] wasn't mine." *Id.* at 41. Appellant believed the Original Survey was accurate "at the time," but learned after entering into the stipulation and agreement that it was not. *Id.* at 38. Appellant testified that she would not have entered into the Agreement if she

---

[6] Mr. Vassallo clarified that he was referring to "the 1972 survey of H. Richard [O]hl." *Id.* at 14.

- 11 -

knew she owned part of the Disputed Parcel. *Id.* at 39. She remarked that she had "lived there 67 years" and "no one ever said anything. I used it." *Id.* Appellant reiterated that she "would have never given it up." *Id.* Appellant agreed that before she learned otherwise, she stipulated to the authenticity of the Original Survey. *Id.* at 40-41.[7]

On July 29, 2025, the trial court issued an opinion and order denying Appellant's motion to rescind the Agreement. The court observed that the Original Survey "served as the foundation for the parties' [A]greement, which was supposed to bring the instant matter to conclusion." TCO I at 5. The court further found:

> On June 13, 2024, [Appellant] agreed to the creation of an easement between [her] parcel and [Appellees'] parcel; said agreement was based on the Original Survey, which [Appellant], at the time, believed to be accurate.
>
> [F]ollowing purported settlement of this matter and this [c]ourt's entry of the Order of June 13, 2024, Timothy Emerick, [Appellant's] son-in-law, requested that Mr. Vassallo perform additional surveying work to investigate the validity of the location of one of the pins demarcating the parties' parcels.
>
> In August 2024, Timothy Emerick gave Mr. Vassallo a copy of this [c]ourt's Order of June 13, 2024, and told Mr. Vassallo that

_____

[7] When Appellees' counsel "direct[ed Appellant's] attention to" paragraph 5 of the amended complaint, and read, "For a period in excess of 21 years, [Appellant and her] predecessors in title, having been in open, exclusive, continuous, and adverse possession of a portion of land along the southern … border of [the North Parcel], which is outlined in the [Original Survey] attached hereto marked Exhibit C," Appellant stated, "I don't even know what that means." N.T., 6/2/25, at 40. Appellees' counsel then asked, "So you don't understand that to mean that you're saying the [Original S]urvey is showing your property line?" *Id.* Appellant answered, "If that's what it says and I signed it, you know." *Id.* at 40-41.

- 12 -

[Appellant] would be responsible for obtaining an outline of the proposed easement based on the [A]greement attached to the Order.

In the course of performing additional surveying work, Mr. Vassallo realized that there was a discrepancy in some of the monuments demarcating the parcels.

Specifically, Mr. Vassallo realized that the existing iron pin at the southwest corner of [Appellant's] parcel was around ten and one-half (10.5) feet further south than it should have been, according to the original deed.

Mr. Vassallo believes that the deed for the relevant parcel was laid out from the south of the other pins, instead of the north, and the original setting of this pin was therefore improper.

Based on his additional surveying work, Mr. Vassallo concludes that the ten and one-half (10.5) feet discrepancy in placement of the pin renders some of the proposed easement area as belonging to [Appellant].

The discrepancy in the location of this pin would have created an issue for Mr. Vassallo in creating a survey with the easement area as depicted in the December 2021 survey.

Because Mr. Vassallo was focused on investigating the placement of one of the pins at the request of Timothy Emerick, Mr. Vassallo never prepared the easement as outlined in this [c]ourt's Order of June 13, 202[4].

Mr. Vassallo was not able to prepare the easement as outlined in this [c]ourt's Order of June 13, 202[4] because Mr. Vassallo did not have information to "substantiate the corner" where the allegedly misplaced pin was located until the end of December 2024.

Between December 2021, when Mr. Vassallo prepared the Original Survey, and August 2024, when Timothy Emerick requested investigation of the allegedly misplaced pin, Mr. Vassallo was never asked to locate information to indicate that the pin was in an incorrect location.

This [c]ourt has issued no Orders, nor has any type of consent been given, which would authorize Mr. Vassallo or any other surveyor to investigate the possibility that a pin was in the incorrect location.

- 13 -

Mr. Vassallo estimates that completion of the tasks outlined in this [c]ourt's Order of June 13, 2024 would have taken a total of approximately five (5) hours.

Mr. Vassallo estimates that, in investigating the location of the pin as requested by Timothy Emerick, Mr. Vassallo and his team have worked at least twenty (20) or thirty (30) hours.

Mr. Vassallo had the capability to complete the tasks outlined in this [c]ourt's Order of June 13, 2024 as early as June 2024.

[Appellant] was not aware of the allegedly misplaced pin at the time she entered into the [A]greement to settle the instant matter.

[Appellant] would not have entered into the [A]greement to settle the instant matter on June 13, 2024, had [she] known about the allegedly misplaced pin.

*Id.* at 5-8 (paragraph numbers omitted).

The trial court rejected Appellant's legal claims of mutual mistake and impossibility of performance. The court determined Appellant was judicially estopped "from attempting, after almost four (4) years of litigation, to raise the issue of inaccurate property boundaries, especially given the multiple occasions on which [she] either verified or stipulated to the accuracy of the Original Survey." *Id.* at 11. Consequently, the court entered an order directing Appellant to "fully satisfy all terms and conditions of this [c]ourt's Order of June 13, 2024 within thirty (30) days." Order, 7/29/25.

On August 28, 2025, Appellant filed a timely notice of appeal, followed by a court-ordered concise statement of errors pursuant to Pa.R.A.P.

- 14 -

1925(b).[8]   On September 26, 2025, the trial court issued an opinion incorporating its prior opinion.   The trial court added that it "wishe[d] to emphasize" the following:

> 1. This case was originally scheduled for a three (3) day non-jury trial before the undersigned for the dates of June 13, June 14, and July 19, 2024.  Prior to the scheduling of the non-jury trial, counsel confirmed that all pleadings and discovery were closed.
>
> 2. The parties appeared before the undersigned on June 13, 2024 and indicated that the matter was resolved pursuant to an agreement between the parties.  This [A]greement was set forth on the record during the proceedings and the three (3) day non-jury trial was canceled.
>
> The [A]greement required the parties to secure a final survey and a final easement agreement with a final proposed order being submitted to the [c]ourt incorporating the final survey and easement agreement.
>
> 3. The [A]greement did not authorize any further discovery or resurveying of the subject premises.
>
> 4. The surveyor who testified at the hearing on [Appellant's] Petition to Rescind confirmed that he was capable of complying with all terms of the original agreement, but was instructed to conduct a further survey at the request of a third party.

Trial Court Opinion (TCO II), 9/26/25, at 1-2.

_____

[8] We agree with Appellant's assertion that the July 29, 2025 order is appealable because the "finality" and "practical consequence of the order" put Appellant "out of court."  Appellant's Brief at 2 (citation omitted).  "This Court has previously held that an order granting enforcement of a settlement agreement constitutes a final, appealable order."  *Whittaker v. Lu*, 323 A.3d 871, 875 (Pa. Super. 2024); *see also Bennett v. Juzelenos*, 791 A.2d 403, 405 (Pa. Super. 2002) (deciding the merits of an appeal in a case involving a boundary and deed dispute, where the trial court "entered a final order, finding the [pre-trial] settlement agreement was enforceable and directing the parties to effectuate it.").

On appeal, Appellant presents six questions:

1. Did the [t]rial [c]ourt err and/or abuse its discretion by denying Plaintiff-Appellant's Motion, instead enforcing the parties' on-record Stipulated Settlement, which was intended to resolve Plaintiff-Appellant's action to quiet title on a theory of adverse possession, where—in the course of performing a final survey in furtherance of the Stipulated Settlement—the licensed professional surveyor determined that a mis-located monument rendered errant the Original Survey, upon which the parties had fundamentally relied in entering the Stipulated Settlement, revealing that Plaintiff-Appellant holds title to a portion of the property in dispute, such that the Stipulated Settlement was based on a mutual mistake of fact?

2. Did the [t]rial [c]ourt err and/or abuse its discretion by denying [Appellant's] Motion and instead enforcing the parties' on-record Stipulated Settlement, which requires the grant of an easement by Defendants-Appellees to Plaintiff-Appellant over land owned by Plaintiff-Appellant, thus requiring impossible performance?

3. Did the [t]rial [c]ourt err and/or abuse its discretion by imputing fault to Plaintiff-Appellant for the actions of her non-party son-in-law of asking the surveyor to ensure accuracy, by essentially attributing blame to Plaintiff-Appellant for somehow causing impossibility of performance of the Stipulated Settlement, because her son-in-law made the entirely reasonable request that the surveyor ensure the accuracy of the pin/monument when performing the final survey required thereby, and held Plaintiff-Appellant barred from asserting the impossibility of performance due to fault, despite that those actions did not cause impossibility, but simply revealed it?

4. Did the [t]rial [c]ourt err and/or abuse its discretion by treating Plaintiff-Appellant's pleadings and pretrial statement's references to the Original Survey and its conclusions as judicial admissions, where all parties believed the Original Survey to be accurate when they entered the Stipulated Settlement, and where Plaintiff-Appellant's reliance on the Original Survey in her pleadings and throughout the litigation was clearly intended to explain her effort to quiet title by adverse possession, rather than as an admission of unequivocal fact, for her advantage.

5. Even assuming *arguendo* that Plaintiff-Appellant's pleadings and pretrial conference memorandum referring to the Original Survey are capable of constituting judicial admissions, did the [t]rial [c]ourt err and/or abuse its discretion by not allowing withdrawal of the deemed admissions, once Plaintiff-Appellant (and everyone else) became aware for the first time that the Original Survey had been in error because of a mis-located pin/monument, and where upholding the deemed admission would practically eliminate any presentation of the merits of the case; where allowing withdrawal would prevent manifest injustice; and where Defendants-Appellees proffered no evidence of genuine prejudice they would experience if withdrawal were permitted?

6. Did the [t]rial [c]ourt err and/or abuse its discretion by finding Plaintiff-Appellant to be judicially estopped?

Appellant's Brief at 7-8.

*DISCUSSION*

When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the trial court. ***Bennett v. Juzelenos***, 791 A.2d at 406. This Court is bound by the trial court's findings of fact which are supported by evidence, and we will only overturn the decision if the factual findings are against the weight of the evidence, or the trial court's legal conclusions are erroneous. ***Id.***

The enforceability of a settlement agreement "is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 408 (Pa. Super. 2010) (citation omitted). The "fundamental rule in contract interpretation is to ascertain the

intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself." *Harley v. HealthSpark Found.*, 265 A.3d 674, 684 (Pa. Super. 2021) (citation omitted).

Appellant raises claims of mutual mistake and impossibility of performance. She states that the parties "fundamentally relied on the Original Survey being correct." Appellant's Brief at 48. Appellant notes there was "no advantage to" her reliance on the Original Survey, "which (ultimately, incorrectly) concluded that Appellees own a portion of the land Appellant actually owns." *Id.* at 41. Appellant adds that "she pursued an adverse possession theory, despite long harboring the belief that the Disputed [Parcel] was her property." *Id.*

With regard to performance under the Agreement, Appellant emphasizes "the plain language of the [Agreement], which expressly required a [F]inal [S]urvey to be performed." *Id.* at 53. Appellant explains that in the process of obtaining the Final Survey and establishing the agreed-upon easement, she learned about the "incorrectness of the property boundary set forth in the Original Survey." *Id.* at 48. According to Appellant, "it is now impossible to perform" under the Agreement because she cannot have an easement on her own land. *Id.* at 48, 51.

Mutual mistake exists where "both parties to a contract [are] mistaken as to existing facts at the time of execution." *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 948 (Pa. Super. 2004) (citations omitted). Mutual mistake serves as a defense to an agreement when the parties "have an

erroneous belief as to the basic assumption … which will have a material effect on the agreed exchange as to either party." ***Hart v. Arnold***, 884 A.2d 316, 333 (Pa. Super. 2005) (citation omitted). A mistake as to a basic assumption on which the parties entered into an agreement will make the contract voidable. Restatement (Second) of Contracts at § 152 (1981), Comment (b). An agreement "entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake if (1) the misconception entered into the contemplation of both parties as a condition of assent, and (2) the parties can be placed in their former position regarding the subject matter of the contract." ***Hart***, 884 A.2d at 334 (citation omitted).

Regarding performance, Pennsylvania law recognizes "impracticability of performance" as a valid defense. The Restatement of Contracts provides:

> § 261. Discharge By Supervening Impracticability
>
> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (1981). "The theory of legal impossibility is objective rather than subjective; the act contemplated under the settlement must be incapable of being performed." ***Felix***, 848 A.2d at 948 (citation omitted). "Once impracticability of performance or frustration of

purpose occurs, 'it is up to the parties to waive the difficulties or seek to terminate the agreement.'" ***Hart***, 884 A.2d at 335 (citation omitted).

Here, the parties intended that Appellant would obtain another survey. The order memorializing the Agreement states that Appellant was "responsible for securing the [F]inal [S]urvey." Order, 6/13/24, at 2. Likewise, in the transcript attached to the order, Appellees' counsel stated that Appellant would "be responsible for the cost of the preparation of the survey, to be done by … Mr. Vassallo, their surveyor, and will be responsible for the cost of the easement." N.T., 6/13/24, at 4.[9] However, the parties also believed that Appellees owned the entire Disputed Parcel.

The trial court acknowledged the parties' mutual mistake. In its findings of fact, the court recounted Mr. Vassallo's testimony that in 2024, he learned there was "a discrepancy in some of the monuments demarcating the parcels"; "the existing iron pin at the southwest corner of [Appellant's] parcel was around ten and one-half (10.5) feet further south than it should have been"; "the deed for the relevant parcel was laid out from the south of the other pins, instead of the north"; and "the original setting of this pin was therefore improper." TCO I at 6. The court also cited Mr. Vassallo's testimony that "the ten and one-half (10.5) feet discrepancy in placement of the pin **renders**

---

[9] In its supplemental opinion, the trial court reiterated that the Agreement "required the parties to secure a [F]inal [S]urvey and a final easement agreement with a final proposed order … incorporating the [F]inal [S]urvey and easement agreement." TCO II at 2.

**some of the proposed easement area as belonging to** [**Appellant**].” ***Id.***
(emphasis added). In its opinion, the court recognized that the Original
Survey "served as the foundation for the parties’ [A]greement, which was
supposed to bring the instant matter to conclusion." TCO I at 5. Nonetheless,
the trial court declined to rescind the Agreement because it determined "the
accuracy of the Original Survey constitutes a judicial admission **which**
**effectively withdraws the relevant property lines from issue**." ***Id.*** at
10 (emphasis added).

The trial court invoked judicial estoppel in reasoning:

Judicial estoppel is "an equitable, judicially-created doctrine
designed to protect the integrity of the courts by preventing
litigants from ‘playing fast and loose’ with the judicial system by
adopting whatever position suits the moment." ***Sunbeam Corp,***
***v. Liberty Mut Ins. Co.***, 781 A.2d 1189, 1192 (Pa. 2001) (citing
***Gross v. City of Pittsburgh***, 868 A.2d 864, 867 (Pa. Cmwlth.
1996)). The doctrine of judicial estoppel essentially "prohibits
parties from switching legal positions to suit their own ends." ***Id.***
Here, [Appellant] asserts that the doctrine of judicial estoppel
cannot apply, since "[Appellant’s] misunderstanding was
premised upon a mistaken survey" as opposed to [Appellant]
‘"playing fast and loose’ with anything." [Appellant’s] Br. in Supp.
of Mot. to Rescind, at 22. The [c]ourt disagrees.

From the commencement of this litigation in December 2021 until
after purported settlement in August [*sic*] 2024, [Appellant] was,
evidently in agreement with the propriety of the Original Survey.
Then, years later and for some yet-unexplained reason,
[Appellant] sought to set aside both the [A]greement and the
Original Survey by engaging Mr. Vassallo to conduct an entirely
new investigation into the property lines. [Appellees] have
engaged in years of motion practice, litigation, discovery, and an

appeal to the Superior Court[10] based on the verified averments of [Appellant's] [a]mended [c]omplaint, one of which is the Original Survey. It would be entirely inequitable for this [c]ourt to allow [Appellant] to set aside the Original Survey and the parties' [A]greement, based on [Appellant's] actions. This [c]ourt would also note that this is at least the second time [Appellant] has sought to set aside a settlement agreement between these parties, and the second time that Timothy Emerick has meddled in litigation, to which he is not a party, with the result of a settlement agreement being called into question. ***See generally Robin Emerick and Shirley Morton v. Frank E. Green, Sr., Gina L. Green, Frank E. Green, Jr., and Roni L. Jones***, Clinton Cty. Civil Docket No. 837-2023. It is this [c]ourt's belief that the doctrine of judicial estoppel was created to prevent precisely this type of conduct.

Even were this [c]ourt to find [Appellant] is not judicially estopped from rescinding the [A]greement, this [c]ourt would still deny the [m]otion to [r]escind based on [Appellant's] judicial admissions. The Commonwealth Court has defined a "judicial admission" as

> an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission, and may be contained in pleadings, stipulations, and other like documents[.] An important facet of such an admission is that it has been made for the advantage of the admitting party and once the admission has been made, the party making it is not allowed to introduce evidence attempting to disprove it.

***Lower Mount Bethel Twp. v. North River Co., LLC***, 41 A.3d 156, 162 (Pa. Cmwlth.2025) (citing ***Sherrill v. Workmen's Comp. Appeal Bd. (Sch. Dist. of Phila.)***, 624 A.2d 240, 243 (Pa. Cmwlth. 1993)) (internal quotations omitted).[11] …

---

[10] The record is not as voluminous as the trial court indicates. For example, Appellant's prior appeal was from the order granting summary judgment as to Robin L. Emerick, and was quashed as being taken from an unappealable order. ***See*** Order, 1/12/24.

[11] Commonwealth Court decisions are not binding on the Superior Court. ***N.T. by & through Barrett v. Children's Hosp. of Philadelphia***, 308 A.3d 1284, 1292 (Pa. Super. 2024).

There can be no doubt that the statements included in [Appellant's] [a]mended [c]omplaint and [p]retrial [s]tatement constitute judicial admissions. [Appellant], in [her p]retrial [s]tatement, clearly and unequivocally stipulates to the accuracy of the Original Survey. Such unequivocal admission is not subject to any other interpretation, and [Appellant] cannot now attempt to contradict the accuracy of the property lines as depicted in the Original Survey.

*Id.* at 11-13.

We disagree with the trial court's application of judicial estoppel, which is a question of law. *N.T. by & through Barrett*, 308 A.2d at 1289. Our standard of review is *de novo*, and our scope of review is plenary. *Id.* With respect to judicial admissions, we agree that a judicial admission is "a clear and unequivocal admission of fact." *Coleman v. Wyeth Pharms., Inc.*, 6 A.3d 502, 524 (Pa. Super. 2010). However, this Court has recognized that a judicial admission "may be disregarded in the interests of justice," and when "there is uncertainty surrounding a conceded fact, it is the role of the judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected." *Id.* at 525 (citations omitted). We conclude that it would be inequitable to enforce the Agreement because there is uncertainty surrounding a conceded fact. The parties entered into the Agreement believing Appellees were the sole owners of the Disputed Parcel. Mr. Vassallo testified to his subsequent determination, when returning to the property in furtherance of the Agreement, that part of the Disputed Parcel belonged to Appellant. *See* N.T., 6/2/25, at 11, 35. As Appellant observes, enforcement of the Agreement would be impossible because it would grant

her an easement over her own land. ***See*** Appellant's Brief at 48; ***see also Stanton v. Lackawanna Energy, Ltd.***, 886 A.2d 667, 676 n.7 (Pa. 2005) (defining an easement as "[a]n interest in land owned by another person") (citation omitted); ***Gogel v. Blazofsky***, 142 A.2d 313, 316 (Pa. 1958) (stating "it is fundamental that an owner of land in fee cannot have an easement over his own property") (citation omitted).

Also, the record does not contain evidence of Appellant "playing fast and loose." TCO I at 11. The trial court said Appellant sought to set aside the Agreement for "some yet-unexplained reason," while Appellant has maintained that her request for recission was premised on the "mistaken" Original Survey. ***Id.***; Appellant's Brief at 3. As to Mr. Emerick, there is little evidence concerning his role in the underlying dispute, and it is unclear why he was communicating with Mr. Vassallo. The trial court referenced, but did not expand upon, separate litigation between the parties, which is not before us. We have no basis to reject Appellant's contention that "Mr. Emerick's request for assured accuracy, which is an obvious and necessary part of any final survey, did no more than spur [Mr. Vassallo] to engage in additional review, which ***revealed*** an existing inaccuracy in the Original Survey." Appellant's Brief at 54 (emphasis in original). Thus, we cannot infer that Appellant and Mr. Emerick acted improperly.

Upon review of the record and prevailing law, we conclude that the parties' Agreement is based on mutual mistake, and performance of the Agreement would be "impracticable without [Appellant's] fault[,] by the

occurrence of an event[,] the non-occurrence of which was a basic assumption on which the contract was made." **Felix**, 848 A.2d at 947. As the parties' Agreement is unenforceable as a matter of law, it must be rescinded. The remedy of recission returns the parties, to the extent possible, to the *status quo*. **US Bank Nat'l Ass'n as Tr. of NRZ Inventory Tr. v. Gardner**, 326 A.3d 113, 119 (Pa. Super. 2024) (citing **Baker v. Cambridge Chase, Inc.**, 725 A.2d 757, 766 (Pa. Super. 1999) ("It is well known that the purpose of equitable recission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction.")).

Order reversed. Case remanded for proceedings consistent with this decision.[12] Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/30/2026

_____

[12] The parties shall determine how they wish to proceed following recission.

- 25 -